FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -6  PM 3: 35

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | ) | CIVIL ACTION NO. 00-362 |
| | ) | |
| VERSUS | ) | SECTION "K" |
| | ) | |
| ST. JOHN THE BAPTIST PARISH | ) | MAGISTRATE "2" |
| HOUSING AUTHORITY, SHEILA | ) | |
| MORRIS, PEDRO FRANCISCO, EULA | ) | |
| YOUNG, STELLA BORNE AND | ) | |
| ALEXANDER WHITE | ) | |

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND MOTION TO DISMISS WITHOUT PREJUDICE

**NOW INTO COURT**, through undersigned counsel come defendants, St. John the

Baptist Parish Housing Authority, Sheila Morris, Pedro Francisco, Eula Young, Stella Borne and

Alexander White, who now moves this Court for partial summary judgment dismissing them from

the Section 1983 claim since there are no material facts at issue. Additionally, the plaintiffs' state

law claims should be dismissed without prejudice since there is no independent jurisdiction in

federal court. A memorandum is submitted in support of this Motion and is attached hereto.

Fee
Process
X  Dktd
CtRmDep
Doc.No. 65

**WHEREFORE**, defendants pray that this Motion for Partial Summary Judgment be granted dismissing the Section 1983 claim and that the state law claims should be dismissed without prejudice since there is no independent jurisdiction in federal court.

Respectfully submitted this 6 day of February, 2001.

RICHARD B. EHRET (16901)
RODNEY, BORDENAVE, BOYKIN
    & EHRET
A Professional Law Corporation
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 527-5450

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by mailing the same to each party, properly addressed and postage prepaid this 6 day of February, 2001.

RICHARD B. EHRET

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | ) | CIVIL ACTION NO. 00-362 |
| | ) | |
| VERSUS | ) | SECTION "K" |
| | ) | |
| ST. JOHN THE BAPTIST PARISH | ) | MAGISTRATE "2" |
| HOUSING AUTHORITY, SHEILA | ) | |
| MORRIS, PEDRO FRANCISCO, EULA | ) | |
| YOUNG, STELLA BORNE AND | ) | |
| ALEXANDER WHITE | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND MOTION
TO DISMISS WITHOUT PREJUDICE**

**MAY IT PLEASE THE COURT:**

The plaintiffs filed the captioned matter on February 4, 2000, alleging a Section 1983

procedural due process claim as well as several pendent state law claims.  The defendants' Answer

asserts the lack of jurisdiction by this Court and also claims, *inter alia*, immunity.  As detailed

below, there is no issue of material fact in dispute regarding the Section 1983 claim and it should

be dismissed.  Additionally, the state law claims should be dismissed without prejudice since this

Court does not have independent jurisdictional grounds to consider them.

# I.
## INTRODUCTION

As noted in plaintiffs' Complaint, the defendant Board of Commissioners is a state agency. Ms. Ester and Ms. Lewis were employed by it since the late 1980's. All of the employees at the housing authority, other than the Executive Director and one other employee whom the defendant Board of Commissioners "shall" designate, are protected by the Louisiana State Civil Service Commission. See La. R.S. 40:539(C)(8). Prior to 1993, the Board of Commissioners had never hired an assistant to any executive director pursuant to §539(C)(8). See Smith deposition, page 67 attached hereto as Exhibit "1". In 1993, the then-Executive Director, Ms. Ethel Segue, announced her retirement. In February, 1993, the Board of Commissioners decided to hire an Assistant Director and have this person work with Ms. Segue for several months before her retirement in order to learn the job. The Board of Commissioners advertised the assistant director job and on April 10, 1993, Ms. Ester took a leave without pay from her classified civil service job as a Project Manager I when she was appointed by the defendant Board of Commissioners as Assistant Director. See Assistant Director Advertisement attached hereto as Exhibit "2".

In October, 1993, Ms. Ester was appointed the Executive Director by the Board after Ms. Segue retired.[1] She secured an employment contract as Executive Director with the defendant

_____

[1] The Executive Director's roll was to run the daily operations of the housing authority and report to the defendant Board of Commissioners. Ms. Ester acknowledged in her deposition that the defendant Board of Commissioners was her "boss", who had the statutory authority to hire and fire her. See Ester deposition, page 73 attached hereto as Exhibit "3".

Board of Commissioners for a term of two (2) years. This employment contract protected her since she no longer retained civil service rights in the unclassified position of Executive Director. Near the expiration of the contract, the defendant Board of Commissioners entered into a new contract with her. This contract had an initial term of three (3) years with two (2) one (1) year extensions based on favorable reviews. See copy of 1995 contract attached hereto as Exhibit "4".

Ms. Ester allegedly received favorable reviews in the August, 1997 Board of Commissioners' meeting which extended her employment contract for two (2) more years, through December, 2000. In 1999, there were disputes between the then Board of Commissioners and Ms. Ester and Ms. Lewis regarding many housing authority issues. These issues are not germaine to the Section 1983 claim and are not addressed in this Motion. The only importance of their mention is that the then-Board of Commissioners was asked to resign by the Parish President in July, 1999 after a HUD review of these disputes. In August, 1999, the Parish President, pursuant to his statutory authority and duty, appointed a new Board of Commissioners of the St. John the Baptist Parish Housing Authority. It was at the first meeting of this new Board of Commissioners that the plaintiffs were terminated. The 1995 contract of Ms. Ester is the subject of her state law breach of contract claim.

Ms. Lewis took a leave without pay from her classified civil service job as a Typist/Clerk II on December 4, 1993 to allegedly assume the Assistant Director's job. See Lewis SF-1 personnel action form attached hereto as Exhibit "5". Ms. Lewis also supposedly secured an

employment contract signed by Ms. Ester several days before the September 13, 1999 termination, which contract was never approved by the new Board of Commissioners. This contract, like Ms. Ester's contract, is the subject of the pendent state law claim.

## II.
## LEGAL ARGUMENT

### A.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." Id. at 249-50 (citations omitted) In addition, if the party opposing the motion fails to establish an essential element of her case, summary judgment is proper. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In evaluating the summary judgment motion, a court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

4

**B.    ELEVENTH AMENDMENT AND SECTION 1983**

Through Section 1983, Congress sought to give a "remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." Monroe v. Pape, 365 U.S. 167, 172 (1961). Accordingly, it authorized suits to address deprivation of civil rights by persons acting "under color of any statute, ordinance, regulation, custom, or usage." 42 U.S.C. §1983. However, Congress did not seek to abrogate the Eleventh Amendment by allowing Section 1983 claims against the state. Indeed, states and their constituents are not "persons" who are proper parties defendant under 42 U.S.C. §1983. Simply put, states and their agencies cannot be sued under Section 1983. See Will v. Michigan Dep't. Upstate Police, 491 U.S. 58, 71 (1989). Moreover, state officials sued in their official capacity similarly enjoy Eleventh Amendment immunity. Suits against state officials in their "official capacity 'generally only represent another way of pleading an action against an entity of which an officer is an agent.'" Hafer v. Nelo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159 (1985)). Thus, the defendant in an official capacity action has the same immunity as the state. Id.

It is undisputed and the plaintiffs acknowledge in their petition that the defendant St. John the Baptist Parish Housing Authority is a state agency. Consequently, it should be dismissed from the Section 1983 claim. The plaintiffs also admit that the September 13, 1999 meeting wherein they were terminated was the first substantive meeting of the new Board of Commissioners of St.

5

John the Baptist Parish Housing Authority.[2] Defendant Commissioners Reverend Alexander White and Stella Borne were not at that meeting and hence did not vote on the termination of the plaintiffs. Consequently, they should be dismissed from the Section 1983 claim as well.

Additionally, plaintiffs do not designate in their complaint in what capacity they are suing the individual Commissioners.[3] Arguably, a damages action brought against a state officer in his or her <u>official</u> capacity is a serious pleading error. Nevertheless, the courts generally allow a suit to proceed when the plaintiffs sue state officers without specifying the capacity. Most Courts of Appeals, including the Fifth Circuit, follow a rule that Section 1983 complaints ambiguous as to the defendant's capacity should be construed liberally in favor of plaintiffs. <u>Pieve-Marin v. Combas D. Sancho</u>, 967 F.Supp. 667, 669-71(DPR 1997) (citing decisions of the 2nd, 3rd, 4th, 5th, 7th, 9th, 10th, 11th and DC circuits).[4] Rarely do the courts refuse to accept a properly pleaded complaint by coercively re-characterizing the complaint as being "really" against the state and therefore barred by the Eleventh Amendment. Admittedly, a Section 1983 suit against a state officer, in his or her

---

[2]There was a Board of Commissioners meeting set for September 8th or 9th, 1999 but was canceled as soon as it started for an alleged improper notice.

[3]The plaintiffs were asked in deposition about the capacity they were suing the individual Commissioners. The plaintiffs' counsel objected, contending the question called for a legal conclusion. <u>See</u> Ester deposition page 102, attached hereto as Exhibit "6".

[4]The minority rule followed by the 6th and 8th Circuits presumes against individual-capacity suits on ambiguous complaints. <u>See</u> e.g. <u>Pieve-Marin</u>, 967 F. Supp. at 670 (citing decisions from the 6th and 8th circuits).

6

personal capacity, is not protected by Eleventh Amendment immunity. Consequently, for purposes of this Motion and without waiving this argument, undersigned counsel will assume the Section 1983 claim pleaded against Commissioners Morris, Young and Francisco is a claim against them in their personal capacities.

## C.    QUALIFIED IMMUNITY OF COMMISSIONERS ACTING IN THEIR PERSONAL CAPACITIES

A determination of whether the defendant Commissioners are entitled to qualified immunity from liability under Section 1983 involves essentially a three-step analysis. The first step is to identify the specific constitutional right allegedly infringed by them. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.' [citation omitted]. The first step in any such claim is to identify the specific constitutional right allegedly infringed. [citations omitted].") Second, the court must determine whether the factual claims of the plaintiffs, if proven, actually establish a violation of the said identified and specific constitutional right. See Siegert v. Gilley, 500 U.S. 226, 233 (1991) ("[D]ecisions of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.") Third, if the court determines that the claims of the plaintiffs do establish a violation of a specific constitutional right, then it must ascertain whether the constitutional right asserted by the plaintiffs to have been violated by the defendant Commissioners was "clearly established" at the

7

time they acted.  See Harlow v. Fitzgerald, 457 U.S. 800 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); see also, Melear v. Spears, 862 F.2d 1177, 1183 (5th Cir. 1989) (the unlawfulness of the act must be apparent in light of pre-existing law); West v. Congemi, 28 F.Supp. 2d 385 (E.D. La. 1999).  Lastly, since the qualified immunity doctrine attempts to balance society's interest in redressing private injury against the risk of interfering with governmental functions, the party seeking damages from that official asserting qualified immunity bears the burden of overcoming that defense once pled.  Hart v. O'Brien, 127 F.3d 424, 441-42 (5th Cir. 1997).

1. **Do the Plaintiffs Have a Constitutionally Protected Right Subject to Section 1983 Redress.**

Procedural due process requires notice and an opportunity to be heard before a person is deprived of a constitutionally protected property interest.  It is undisputed that plaintiffs held tenured positions as civil service employees prior to their acceptance of the unclassified jobs as Executive Director and Assistant Director in 1993.  Moreover, it is undisputed that tenured civil service employment has long been recognized as a property interest entitled to constitutional protection.  Cleveland Board of Education v. Loudermil, 470 U.S. 532, 537 (1985).  Defendant Commissioners contend that the plaintiffs abandoned their property interest of tenured employment by taking "a leave without pay status" from their classified jobs and then failing to renew this status or otherwise by resigning their jobs.

8

Louisiana Revised Statute 40:539(C)(8) provides that: "Except as provided in the Constitution of Louisiana and as may otherwise be authorized by the State Civil Service Commission, all employees of the [Public Housing Authority] except [the Commissioners], the Executive Director and one other employee whom the [Commissioners] shall designate and employ, and except professional employees employed on a contract basis, shall be in the classified State Civil Service." (emphasis supplied)

The Louisiana Civil Service Rules provide the following:

4.1     Classified and Unclassified Positions.

      a.     All departments and persons subject to the Civil Service Article are governed by these rules.

      b.     Subject to the provisions of Sub-Section (c) and (d) of this Rule, all officers and employees of the State of Louisiana are in the Classified Service.

      c.     Subject to the provisions of Sub-Section (d) of this Rule, the following officers and employees of the State of Louisiana shall be in the Unclassified Service.

           i.     Elected officials and persons appointed to fill vacancies in elected offices.

           ii.     The head of each principal executive department appointed by the Governor.

           iii.     Registrars of Voters.

           iv.     Members of state boards, authorities, and commissions.

           v.     One private secretary to the president of each college or university.

           *vi.*     *One person holding a confidential position and one principal assistant or deputy to an officer, board, commission or authority*

9

> mentioned in (i), (ii), (iii) or (iv) above, except
> the State Department of Civil Service.

It is quite clear from reading the Civil Service Rule as well as the Section 539(C)(8) that all but the Executive Director and his or her assistant to any public housing Board of Commissioners are classified civil service employees. Additionally, the Board of Commissioners hire and fire the Executive Director and the "one other employee" that is his or her assistant.[5]

When the plaintiffs obtained their <u>unclassified</u> jobs of Executive Director and Assistant Director in 1993, they acknowledged that those two jobs are not protected by the Civil Service Rules. Indeed, Ms. Ester testified that:

> Q:    And when you went from the Project Manager to the Assistant Director's job, that was an unclassified job, correct?
> A:    Correct.
> Q:    What did you do, if anything, with your civil service status?
> A:    For which position?
> Q:    For the Assistant Director?
> A:    The civil service - there were papers that were forwarded to Civil Service for me to take a leave without pay in the unclassified job.
> Q:    And tell me, if you know, what does that mean 'leave without pay for an unclassified position'?
> A:    Basically, that, the protection that we had with Civil Service, I want you to take a leave without pay. The contractual

---

[5]Other provisions of Section 539 note that the Executive Director makes all the other personnel decisions for the housing authority in accordance with the State Civil Service Rules. The plaintiffs contend that the Executive Director retains the right to hire her assistant. Although this issue is contested by the defendants since Section 539(C)(8) is clear as to who has the authority to hire this "one other employee", this issue is not relevant or material for dismissal of the Section 1983 claim.

10

> > agreement, if there were any to exist between - for those two - for the unclassified position, the protection that we would depend upon, the contract versus civil service.
>
> Q:    So in other words you weren't protected by the Civil Service rules and regulations when you took those unclassified positions?
>
> A:    Correct.
>
> Q:    And is that -- the same is true, when you took the Executive Director's job?
>
> A:    Yes.
>
> Q:    You were not protected by the Civil Service system?
>
> A:    Yes.

<u>See</u> Ester deposition pages 15-16, attached hereto as Exhibit "7".[6]

Moreover, whatever protections the leave without pay status preserved for the plaintiffs while they were in their unclassified jobs was certainly abandoned by Ms. Ester on September 16, 1997 and by Ms. Lewis on December 4, 1998. On September 16, 1997, Ms. Ester signed a letter resigning from her classified position. <u>See</u> September 16, 1997 letter attached hereto as Exhibit "9". The deposition of Department of State Civil Service leaves no doubt that Ms. Ester's civil service file reflects the end of her extension of leave without pay status on that resignation date.

> Q.    O.k., do you know why there was a break from going to annual renewals of leave without pay [for Ms. Ester] to this [document] that ends in September of 1997, as opposed to going through April of 1998?

---

[6]See also Lewis deposition page 20, attached hereto as Exhibit "8".

> Q:    She told you that as an unclassified employee, you would not be entitled to any of those Civil Service rights regarding notice and hearings?
>
> A:    Yes.

11

A:      No, sir, I do not.

* * *

Q:      So that is the last document that you have that extends the leave without pay status, correct?

A:      Yes.

* * *

Q:      According to your file of Ms. Ester, as of September 16, 1997, what job did she have that she was on leave without pay?

A:      September of --?

Q:      '97, was she a Project Manager, a Housing Project Manager?

A:      She was on leave without pay from the Housing Project Manager.

Q:      Now do you know, can you have more than one job as a civil servant?  Can you hold down more than one job under civil service rules?

A.      You can't have two full-time jobs under civil service.  You can have a full-time job and a part-time job, but not two full-time classified jobs.

Q:      Does her file reflect that she only had one job in September '97?

A:      Yes, I think so.

Q:      Now, I would like to direct your attention to Ms. Lewis' file, please, ma'am.  If you don't mind, let me just, what is the last date that you have where she sought an extension of leave without pay?

A:      Ms. Lewis?

Q:      Ms. Lewis.

A:      12/4/97.

Q:      And those extensions under the rules were valid for a year?

A:      Yes.

Q:      And who has the obligation to extend it?  The appointing authority?

A:      The appointing authority.

See deposition, Department of State Civil Service, Eula Vernell, pages 53-54, 63-64, attached hereto as Exhibit "10", *in globo*.  See also, SF-1 form of Clara Lewis attached hereto as Exhibit "11".

12

All of the policy considerations enunciated in <u>Loudermil</u> and its progeny regarding classified civil servants' expectations of notice, hearing, etc. prior to termination are not applicable since the plaintiffs knowingly abandoned or resigned their civil service rights. Moreover, the plaintiffs never filed a grievance or otherwise appealed to the Civil Service Commission their termination from their supposed civil service jobs. Plain and simple, the plaintiffs had no civil service rights on September 13, 1999.

There is no material facts at issue on whether the plaintiffs even had a constitutionally protected right that can be attached to a Section 1983 claim. Although they have alleged an employment contract claim under state law, their Section 1983 claim should be dismissed. Ms. Ester had no civil service rights since she resigned her only classified civil service job she was on leave from, and Ms. Lewis never extended her leave without pay status past December, 1998.

**2.    A Clearly Established Constitutional Right?**

Assuming there is a finding that Ms. Lewis had a constitutional right in her leave without pay status as an unclassified employee that was violated, and Ms. Ester never resigned her classified job, the next inquiry involves whether this constitutional right was "clearly established" at the time the three defendant Commissioners acted. <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603 (1999); <u>West v. Congemi</u>, 28 F.Supp. 2d 385 (E.D. La. 1998). A right is "'clearly established' if its contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Wooley v. City of Baton Rouge</u>, 211 F.3d 913, 919 (5th Cir. 2000) (citations omitted).

13

This issue is typically a question of law. Id.; Pierce v. Smith, 117 F.3d 866 (5th Cir. 1997). The plaintiffs' alleged constitutional entitlement to their job is not a clearly established right; witness the undisputed facts of the previous section in this memorandum. Moreover, the two new Board of Commissioners who made the motion to terminate the plaintiffs' employment contracts and seconded that motion, had just been told by the then-counsel for the Board of Commissioners that the plaintiffs could always be terminated for "cause." Both of these new Commissioners unequivocally state that their decisions to terminate the plaintiffs' employment with the Board of Commissioners was based on their conduct at this first meeting of the new Board of Commissioners.

> Commissioner Young testified as follows:
> Q:    Switching gears a little bit, in talking about the September 13th, 1999 meeting, you mentioned that Mr. O'Reagan [then-counsel to the Board of Commissioners] at some point in time was asked some questions about the contracts and both he and Mr. Barnett addressed the Board about the status of the contracts. Do you recall Mr. O'Reagan ever stating to the Commissioners in response to a question that you can always terminate for cause?
> A:    Yes.
> Q:    Now, when you made your motion to terminate the contracts of Ms. Lewis and Ms. Ester, did you ever mention the word "cause"?
> A.    I don't remember.
> Q:    O.K. Was it your understanding - tell me, when you made your motion and you were giving your reasons about the dancing and the deceit, in your opinion is that cause?
> A:    Cause, yes.

See Young deposition, page 97 attached hereto as Exhibit "12"

> Commissioner Francisco testified:
> Q:    Mr. Francisco, you have testified that you were at the September 13th meeting. Do you recall at that meeting when Mr. O'Reagan and Mr. Barnett

14

> were asked to address the Commissioners about the contracts of Ms. Lewis and Ms. Ester?
>
> A:    Yes, sir.
>
> Q:    O.K.  Do you recall when Mr. O'Reagan said that you can terminate Ms. Lewis and Ms. Ester for cause?
>
> A:    Yes, they said that.
>
> Q:    Now, you testified earlier that you had voted to - you, in fact, seconded Ms. Young's motion to terminate them, and you did that because - and I put it in quotes, and correct me if I am wrong, "the lack of information from Patrena Ester and Clara Lewis at that Board meeting."
>
> A:    Yes.
>
> Q:    Now, is that, in your mind, cause to terminate them?
>
> MS. SPENCER:
>
> I am going to object.  It calls for a legal conclusion.  Subject to the objection, you can answer his question.
>
> QUESTION BY MR. EHRET:
>
> Q:    Was that in your mind cause to terminate them?
>
> A:    Yes, it was.  In my mind, yes it was.

See Francisco deposition pages 57-58 attached hereto as Exhibit "13".

In essence, these new Commissioners believed that terminating the Executive Director and the Assistant Executive Director's employment contract was consistent with pursuing their mission to protect the public fisc and further their duties as defined in the mission statement of public housing to provide safe, sanitary and affordable public housing in St. John the Baptist Parish.  Additionally, the September 13, 1999 meeting was video taped and Ms. Young reviewed the video tape prior to her deposition.

> Q:    You have acknowledged in your motion that it was your first night on the Board.
>
> A:    Yes.
>
> Q:    Didn't you think, Ms. Young, that in light of the fact that you had only been sworn in hours before -

| A: | Four hours ago, yea. |
|---|---|
| Q: | -- in light of the fact that Ms. Ester and Ms. Lewis had held these positions for quite a number of years, that it might be prudent to investigate the matter more fully before moving to terminate them? |
| A: | Did you - you said you watched the tape. I said I am starting anew; let's all start anew, and with the same opportunity to be able to apply for it; let's start anew. The dancing and the lying, I mean it was so evident. |
| Q: | Tell me, what dancing - what do you mean dancing and lying? |
| A: | With words. |
| Q: | Tell me what you mean by that. |
| A: | Dancing with words. That is what I think I said, the words - dancing with words. |
| Q: | Who danced with words? |
| A: | As far as I could see - if this was the agenda for the 9th, this is the 13th, and the request was made for all of this, and nothing was there. 'It might be at my office; it might be at home.' Come on now. Legally - |
| Q: | Did you - go on. Finish, and then I will ask my next question. |
| A: | Legally, if as the Director or the Assistant, when these things were asked for, they should have been able to, they should have been at the meeting. Right? |

See deposition of Young, pages 66-67, attached hereto as Exhibit "14".

Moreover, at no point during the September 13, 1999 meeting did the plaintiffs allege their retention of civil service employment rights. Simply put, the Board terminated their contract for cause and was never informed of any supposed residual civil service employment rights the

plaintiffs had.[7]  Consequently, there is no evidence that what the defendant Commissioners did was

a self-evident violation of a clearly established right and the Section 1983 claim should be dismissed.

### 3.    Qualified Immunity Inquiry.

Assuming the Court finds the plaintiffs' unclassified civil service jobs or employment

contracts were a clearly established constitutional right that was allegedly violated by the defendant

Commissioners, or that the plaintiffs somehow retained their right as classified employees, the Court

must then make a determination whether the defendant Commissioners violated a  right of which a

reasonable person would have known.  The court's inquiry on "whether an official protected by

qualified immunity may be held personally liable for an allegedly unlawful official action generally

turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that

were 'clearly established' at the time it was taken."  Wilson v. Layne, 526 U.S. 603, 610 (1999).  As

noted in the Wooley v. City of Baton Rouge case, "qualified immunity provides 'ample protection

to all but the plainly incompetent or those who knowingly violate the law.'"  Wooley at 918 - 19

(citations omitted).  Indeed, the qualified immunity standard gives "ample room for mistaken

---

[7]Even if the defendant Commissioners were informed at this meeting of retained civil service
rights, these Commissioners had no authority to affect their civil service status.  See La. R.S.
40:539(C).  The defendant Commissioners could not hire or fire the classified civil servants.
Consequently, the civil service issue as a basis for the Section 1983 claim is not even proper since
the plaintiffs knew in September, 1999 that the defendant Commissioners statutorily could never
affect their civil service rights.

17

judgments" by protecting the state officials from continual second guessing by the court of discretionary decisions. Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000).

There is no dispute that the September 13, 1999 meeting was the first official meeting of the new Board of Commissioners. Additionally, there is no dispute that after an approximate four (4) hour meeting, Ms. Young moved to terminate the contracts of the plaintiffs with the defendant Board of Commissioners and said motion was seconded by Commissioner Francisco. Since there was a quorum of three (3), and both Commissioners Young and Francisco voted in favor of the termination, the vote of Commissioner Morris is irrelevant, even though she also voted in favor of the motion.[8] As noted above, both Commissioners Young and Francisco testified that the motion to terminate the employment of the plaintiffs was based solely on the plaintiffs' behavior at this first meeting of the new Board of Commissioners. Finally, even the plaintiffs admit that they have no evidence Commissioners Young and Francisco's motion was based on anything other than the plaintiffs' behavior at that meeting.

> Q:  Do you know who actually made the motion to have you terminated?
> A:  I believe it was Eula [Young].
> Q:  And do you have any evidence that she based her motion on anything, other than what she heard at that meeting?
> A:  Ask me that again.

---

[8]Sheila Morris was a Commissioner on the Board that was dismissed in July, 1999 after the HUD review of the Housing Authority. This review was critical of Ms. Morris' actions as a Commissioner. Her reappointment to the new Board by the Parish President is fodder for much discussion and debate, but is irrelevant to material facts in this Motion.

18

> Q:    Sure. Ms. Young made the motion to terminate you and my question is: Do you have any evidence that she based her motion on anything, other than what she heard at that September 13th meeting, that being her first meeting ever as a Housing Commissioner?
>
> A:    No.
>
> * * * * *

See Ester deposition page 12, attached hereto as Exhibit "15".

> Q:    You testified earlier that Ms. Young, this was her first meeting, September 13th?
>
> A:    Yes, sir.
>
> Q:    Mr. Francisco, this was his second meeting, and the first meeting that he attended was very brief.  O.K.? And I just want to know, do you have any evidence that Ms. Young and Mr. Francisco based their motion to terminate you on anything, other than what they heard at that meeting?
>
> A:    I don't have any evidence, no.

See Lewis deposition pages 91-92, attached hereto as Exhibit "16".

Whether the actions by Commissioners Young and Francisco were imprudent or ill-advised is not the issue in a qualified immunity defense inquiry.  Rather, the court must focus on whether these government officials were reasonably performing discretionary functions.  Again, as noted in the Wooley case, for the defendant Commissioners' actions not to be protected by the qualified immunity afforded under federal law, the "unlawfulness" of their actions must be apparent. Wooley, 211 F.3d at 919 (citations omitted).  Further, the applicable law that binds the conduct of office holders must be clearly established at the very moment that the allegedly actionable conduct was taken.  This issue is typically a question of law.  Id. (citations omitted).  Ms. Young, in making

19

her motion to terminate the plaintiffs, believed that Ms. Lewis and Ms. Ester were being deceitful

and "dancing with words" in responding to questions germaine to agenda items for that particular

meeting.  Likewise, Mr. Francisco testified in his halting English that:

> Q:     Why did you vote to terminate Ms. Lewis and Ms. Ester?
> A:     I think - the lack of information from Ms. Ester and Ms.
>        Lewis is brought me to that
>                         * * *
> Q:     Did you vote to terminate Ms. Ester and Ms. Lewis because
>        they failed to bring contracts to the meeting?
> A:     We was - Ms. Ester was - she wasn't answering the questions
>        the way we want.
> Q:     She wasn't answering the way you wanted her to?
> A:     We asked Ms. Lewis to come in and answer some questions
>        and she refused to come in and answer the questions to us.
>        O.k.  We was the Commissioners.  We are in the position to
>        ask whatever we want of them and they, there was all kinds,
>        it was all kinds of lack of information.  That is the main
>        reason I vote against them.

See Francisco deposition, pages 36-37 attached hereto as Exhibit "17".

These new Commissioners were informed by their counsel that they could fire Ms.

Ester and Ms. Lewis for cause and they acted solely based on what they saw at this first meeting.

The latitude provided government officials in making discretionary decisions is so broad that the

plaintiffs have to disprove immunity once pled.  Hart v. O'Brien, 127 F.3d 424, 441-42 (5th Cir.

1997).  This onerous burden on the plaintiff is to prevent needless judicial interference of

governmental functions.

The Revised Statutes instruct the Commissioners to hire and fire the Executive Director and the Assistant Director.  The defendant Commissioners exercised their lawful discretion on September 13, 1999.  The defendant Commissioners are entitled to qualified immunity to the plaintiffs' Section 1983 claim.  Not only is this immunity warranted based on the undisputed facts set forth herein, but additionally, the plaintiffs cannot prove that the immunity is not appropriate, as required by law, to prevent summary judgment of the Section 1983 claim.

**D.    DISMISSAL WITHOUT PREJUDICE OF THE PENDENT STATE LAW CLAIMS**

The district court has discretionary power to adjudicate pending claims after it has dismissed federal claims that originally invoked its jurisdiction.  United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966); Matherne v. Larpenter, 54 F.Supp. 2d 684 (E.D. La. 1999).  As the Fifth Circuit noted in Robertson v. Mireaux Medical Center, 161 F.2d 292, 296 (5th Cir. 1998), "[A] district court has wide discretion to refuse to hear a pendent state law claim. [citations omitted]  We will therefore reverse the district court's decision to remand pendent state law claims after dismissing all remaining federal claims only providing a finding of an abuse of this 'wide' discretion. (citations omitted)  The Supreme Court identified certain circumstances that should persuade a court to dismiss a state claim: Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claim should be dismissed as well.'"  The Fifth Circuit in Robertson found that, after dismissing by summary judgment the federal

21

question claim, the district court did not abuse its discretion in dismissing without prejudice the state law claims.

The plaintiffs' state law claims for breach of contract and a violation of the Continuing Wage Statute of Louisiana should be dismissed without prejudice.

### III.
### CONCLUSION

There are many facts in dispute surrounding the termination of the old Board of Commissioners and the relationship this old Board of Commissioners had with the plaintiffs in this lawsuit. These facts are not material to the plaintiffs' Section 1983 claim against the new Board of Commissioners. It is undisputed that the plaintiffs were fired by the new Board of Commissioners at its first meeting on September 13, 1999. The plaintiffs cannot establish a material fact in any of the dispositive tests afforded state government agencies and officials who seek immunity: The St. John the Baptist Parish Housing Authority is a state agency not subject to Section 1983 liability; two (2) of the five (5) Commissioners did not attend the first meeting of the new Board of Commissioners when the plaintiffs were fired and consequently should be dismissed from the Section 1983 claim; the plaintiffs do not have a constitutionally protected right subject to Section 1983 remedy; the plaintiffs' rights were not clearly established when this new Board of Commissioners acted for the first time; the plaintiffs cannot show that the new Board knowingly violated the law or was otherwise utterly incompetent when they terminated the plaintiffs; and finally, the plaintiffs cannot meet their burden of disproving entitlement to qualified immunity by

22

these new Commissioners. Finally, the only claims that are disputed and are not appropriate for summary judgment are the continuing wage claims and breach of employment contract claims, both of which are not subject to this Court's independent jurisdiction. Plaintiffs' Section 1983 claim should be dismissed against all defendants and the remaining claims dismissed without prejudice.

Respectfully submitted this ___6___ day of February, 2001.

RICHARD B. EHRET (16901)
RODNEY, BORDENAVE, BOYKIN, & EHRET
A Professional Law Corporation
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 527-5450

ATTORNEYS FOR DEFENDANTS, ST. JOHN THE BAPTIST PARISH HOUSING AUTHORITY, SHEILA MORRIS, PEDRO FRANCISCO, EULA YOUNG, STELLA BORNE AND ALEXANDER WHITE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by mailing the same to each party, properly addressed and postage prepaid this __6__ day of February, 2001.

RICHARD B. EHRET

23

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | ) | CIVIL ACTION NO.  00-362 |
| | ) | |
| VERSUS | ) | SECTION "K" |
| | ) | |
| ST. JOHN THE BAPTIST PARISH | ) | MAGISTRATE "2" |
| HOUSING AUTHORITY, SHEILA | ) | |
| MORRIS, PEDRO FRANCISCO, EULA | ) | |
| YOUNG, STELLA BORNE AND | ) | |
| ALEXANDER WHITE | ) | |

## PROPOSED ORDER

Considering the foregoing Motion for Partial Summary Judgment and Motion to Dismiss Without Prejudice;

**IT IS ORDERED, ADJUDGED AND DECREED**, that defendants, St. John the Baptist Parish Housing Authority, Sheila Morris, Pedro Francisco, Eula Young, Stella Borne and Alexander White's Motion for Partial Summary Judgment and Motion to Dismiss Without Prejudice is hereby **GRANTED.**

New Orleans, Louisiana this ___ day of February, 2001.

_____
U.S. DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PATRENA ESTER AND CLARA LEWIS  )          CIVIL ACTION NO.  00-362
                                )
VERSUS                          )          SECTION "K"
                                )
ST. JOHN THE BAPTIST PARISH      )          MAGISTRATE "2"
HOUSING AUTHORITY, SHEILA         )
MORRIS, PEDRO FRANCISCO, EULA     )
YOUNG, STELLA BORNE AND           )
ALEXANDER WHITE                   )

## STATEMENT OF UNCONTESTED FACTS

1.      The plaintiff, Patrena Ester, was a classified civil service Project Manager I

employee of the St. John the Baptist Parish Housing Authority on April 10, 1993, when she was

appointed by the defendant Board of Commissioners to the unclassified job of Assistant Director.

Ms. Ester took a leave without pay status from her classified Project Manager I job on this date.

2.      Ms. Ester was appointed by the defendant Board of Commissioners in

October, 1993, to the unclassified job of Executive Director for the St. John the Baptist Parish

Housing Authority.  Ms. Ester knew this job was unclassified.

3.    Ms. Ester submitted SF-1 civil service forms annually to extend her leave without pay status from the classified Housing Project Manager I job: on April 10, 1994, April 10, 1995, April 10, 1996 and April 10, 1997. Her last SF-1 extension of April 10, 1997 had an expiration date of September 17, 1997.

4.    On September 17, 1997, Patrena Ester signed a letter resigning her classified civil service position as Project Manager I.

5.    According to civil service records, Ms. Ester had only one (1) classified job that she was on leave without pay from, Project Manager I, when she signed her resignation letter on September 17, 1997.

6.    Clara Lewis was a classified civil service Typist/Clerk II employee of the St. John the Baptist Parish Housing Authority on December 4, 1993. Ms. Lewis took a leave without pay status from her classified Typist/Clerk II job to become the Assistant Director. Ms. Lewis knew this job was unclassified.

7.    Clara Lewis extended her leave without pay status to December 3, 1998. She did not extend her leave without pay status past that date.

8.    Patrena Ester, as Executive Director, was the "appointing authority" for the housing authority and had the obligation to submit all civil service forms to the Department of State Civil Service for employees of the St. John the Baptist Parish Housing Authority.

2

9.      Patrena Ester secured an employment contract with the Board of Commissioners for her unclassified job as Executive Director on September 1, 1993.

10.     The Board of Commissioners approved this contract by resolution No. 93-407 on September 1, 1993.

11.     On November 1, 1995, the Board of Commissioners provided Ms. Ester with a new contract for three (3) years and which contract also included two (2) one (1) year extensions.

12.     The Board of Commissioners approved this contract by Resolution No. 95-461 on November 1, 1995.

13.     The Board of Commissioners never approved of a contract of employment for Clara Lewis.

14.     After the September 13, 1999 Board of Commissioners meeting wherein Ms. Ester and Ms. Lewis were terminated from their unclassified jobs as Executive Director and Assistant Director, Ms. Ester and Ms. Lewis never filed a grievance or otherwise petitioned the Department of State Civil Service for alleged violations by the Board of civil service rules or otherwise sought retention of any supposed civil service jobs or rights.

3

15.    Reverend Alexander White and Stella Borne did not attend the September 13, 1999 Board of Commissioners meeting.

Respectfully submitted this ___6___ day of February, 2001.

RICHARD B. EHRET (16901)
RODNEY, BORDENAVE, BOYKIN, & EHRET
A Professional Law Corporation
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 527-5450

ATTORNEYS FOR DEFENDANTS, ST. JOHN THE BAPTIST PARISH HOUSING AUTHORITY, SHEILA MORRIS, PEDRO FRANCISCO, EULA YOUNG, STELLA BORNE AND ALEXANDER WHITE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by mailing the same to each party, properly addressed and postage prepaid this ___6___ day of February, 2001.

RICHARD B. EHRET

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | ) | CIVIL ACTION NO. 00-362 |
| | ) | |
| VERSUS | ) | SECTION "K" |
| | ) | |
| ST. JOHN THE BAPTIST PARISH | ) | MAGISTRATE "2" |
| HOUSING AUTHORITY, SHEILA | ) | |
| MORRIS, PEDRO FRANCISCO, EULA | ) | |
| YOUNG, STELLA BORNE AND | ) | |
| ALEXANDER WHITE | ) | |

## NOTICE OF HEARING

TO:   **PATRENA ESTER** and
      **CLARA LEWIS**
      Through Their Attorney of Record
      Julie Richard-Spencer
      P.O. Box 6768
      LaPlace, Louisiana 70068

        **PLEASE TAKE NOTICE** that defendant, St. John the Baptist Parish Housing

Authority, Sheila Morris, Pedro Francisco, Eula Young, Stella Borne and Alexander White, will

bring on for hearing its Motion for Partial Summary Judgment and Motion to Dismiss Without

Prejudice in the above captioned matter before the Honorable Stanwood R. Duval, Judge, United

States District Court for the Eastern District of Louisiana, Section "K", at the United States

Courthouse, 500 Camp Street, New Orleans, Louisiana on the 21st day of February, 2001, at

_9:30_ o'clock a.m. or as soon thereafter as counsel may be heard.

Respectfully submitted this _6_ day of February, 2001.

RICHARD B. EHRET (16901)
RODNEY, BORDENAVE, BOYKIN
    & EHRET
A Professional Law Corporation
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 527-5450

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel

of record via facsimile and by mailing the same to each party, properly addressed and postage

prepaid this _6_ day of February, 2001.

RICHARD B. EHRET

2

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**