

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR -1  PM 4: 22

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NUMBER: 00-0362 |
| | * | |
| ST. JOHN THE BAPTIST PARISH | * | SECTION: K |
| HOUSING AUTHORITY, SHEILA MORRIS, | * | |
| PEDRO FRANCISCO, EULA YOUNG, | * | MAG.  2 |
| STELLA BORNE, and ALEXANDER WHITE | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN OPPOSITION TO
### THE MOTION FOR PARTIAL SUMMARY JUDGMENT
### AND MOTION TO DISMISS WITHOUT PREJUDICE

### I. INTRODUCTION

NOW INTO COURT, through undersigned counsel, come the plaintiffs Patrena Ester and

Clara Lewis who respectfully oppose the motion for partial summary judgment and motion to dismiss

without prejudice filed by the defendants in this matter.  As specified below, there exists significant

material facts in dispute regarding the Section 1983 claim.  Therefore, the claim cannot be dismissed.

Because the Section 1983 claim must survive, the state law claims are properly subject to federal

jurisdiction pursuant to supplemental and/or pendant jurisdiction.

1

Fee
Process
X Dktd
CtRmDep
Doc.No. 70

The St. John the Baptist Parish Housing Authority is not a state agency but, instead, is a local government entity subject to suit under 42 U.S.C. §1983. Eleventh Amendment immunity does not apply to suit against the Authority or against the individual Board of Commissioners in their official capacities. Further, the individual Board members, sued in their individual capacities, are not entitled to qualified immunity. Ester and Lewis have constitutionally protected rights to procedural due process. This right is clearly established, and the actions of the Board of Commissioners were not objectively reasonable. Finally, because the 1983 claim stands, dismissal, without prejudice, of the pendant state law claims is inappropriate here.

## II. STATEMENT OF THE FACTS

Plaintiffs Ester and Lewis served respectively as the Executive Director and Assistant Executive Director of the St. John the Baptist Parish Housing Authority (hereafter Authority) from late 1993 until September 13, 1999. Both began employment with the Authority in 1987 and served in a number of civil service positions until they received their current assignments. At that time, both were placed on leaves of absence from their civil service positions. The leave status was maintained throughout the remainder of their employment. (See Exhibits 1 and 4).[1]

Under the guidance of Ester and Lewis the Authority began to thrive, experiencing improvements in living conditions of residents of the 4 housing-developments managed by the Authority. Crime was addressed through community policing and the adoption of the One Strike Policy. (Exhibit 8, pp. 12, 16, 22, 25). PHEMAP scores, the HUD measuring device for Authority's throughout the country, soared, even reaching 100% in 1998. (See Exhibit 9).

---

[1]The Exhibits attached to the Opposition to Defendants' Statement of undisputed Facts will be utilized here and additions made where necessary.

As a result of Ester's progress, the Board of Commissioners awarded Ester a new contract in 1995. (Exhibit 5). This contract granted Ester, as did the law, the exclusive right to administer the day to day operations of the Authority. The contract gave Ester the power to hire and fire employees as needed to run the Authority. The contract provided for the extension of the contract for 2 one-year extensions based upon favorable evaluations of Ester. In August 1997, the Board of Commissioners granted Ester favorable evaluations for the 1995 and 1996 years effectively extending the contract until December 31, 2000. (Exhibit 10). The contract provides for payment of unpaid salary and benefits at the premature termination of the contract by the Authority, and it provides for treble liquidated damages if these amounts are not paid within 30 days of demand.

In early 1998, problems arose within the Authority. Conflict occurred between Ester and the Chairman of the Board of Commissioners, Sheila Morris. This conflict occurred because Ester refused to violate HUD regulations to place an individual on the Section 8 waiting list as Morris insisted be done. Ultimately, the dispute was resolved when HUD intervened to inform Morris that her request to Ester violated HUD requirements. However, from that point, Morris became disenchanted with Ester and began to interfere with the daily operations of the Authority. (Exhibit 2, p. 111; Exhibit 6, pp. 31-34, 37-39).

Morris (with 2 other Commissioners, Collins and Feist) began to attack the actions of Ester regularly. These attacks included: waiver of fines imposed on tenants for destruction of property, removal of criminal element from bar lists under the One Strike policy, seeking increases in the Board's per diem, seeking Board credit cards, challenging employment decisions of Ester, and most importantly, encouraging tenants to circumvent the normal work order system for maintenance repairs to their units by taking orders and assigning maintenance employees to repair work. (Exhibit 2, pp.

3

28-29, 51; Exhibit 6, pp. 31-34, 37-39, 43-45; Exhibit 11, pp. 12-16, 26, 30-33; Exhibit 12, pp. 24-26).

In the summer of 1999, these disputes became public when Morris, with the assistance of several formerly terminated employees of the Authority, went to units and videotaped unfavorable conditions. (Morris and her group looked at 7-8 of the 315 units in the developments.) These tapes were provided to HUD's Washington D.C. office and the media, leading to an outcry in the HUD community. HUD's New Orleans office met with Morris and Ester and ordered a top to bottom inspection of the Authority. (Exhibit 11, pp. 17-20).

After a two-day inspection, HUD issued its report exonerating Ester, Lewis and their staff and condemning the Board of Commissioners. In short, the report noted some maintenance deficiencies and made some recommendations for improvement. However, the report focused on the Board interference in three primary areas: the diminution of the One Strike policy, interference in the maintenance policies of the Authority, and waiver of charges to residents who damage or abuse their homes. (Exhibit 13). HUD directed Arnold Labat, the Parish President and the appointing authority, to remove the entire Board of Commissioners. (Exhibit 14). In its report, HUD rated Ester and Lewis as "acceptable if not exemplary." (Exhibit 13.)

The Parish President removed the Board of Commissioners, but inexplicably reappointed Morris to the Board. Before the new Board could be seated, Labat illegally terminated Ester on August 20, 1999 and tried to seize control of the HUD office. (See Exhibit 15; Exhibit 2, pp. 33-34; Exhibit 7, pp. 49-67; Exhibit 11, pp 42-44. HUD declared Labat's action invalid and returned Ester to her position. (Exhibit 16). Ester returned to work and began to attempt to implement the HUD suggested maintenance improvements. Because Ester feared she would lose her assistant, Lewis, who

had threatened to quit in the wake of the tumultuous time, Ester offered Lewis a contract of employment. (Exhibit 17). (Lewis was placed in possession of keys to the building at Ester's unlawful termination. Lewis was placed in the untenable position of filing criminal trespass charges against Labat, Morris, and Labat staff members, who illegally entered the Authority office on August 23, during the unlawful termination of Ester. (Exhibit 7, pp. 49-67). Lewis agreed to remain under the terms of the contract. The contract paralleled the contract of Ester.

HUD approved the new Board early in September despite objections that Morris had been returned to the Board. In the first full meeting conducted by the Board, a bare majority (only 3 members attended, including Morris) terminated Ester and Lewis. The Board was advised by its legal counsel William O'Regan that the contracts of Ester and Lewis were legal and binding (Exhibit 6, pp. 99, 104-110). The Board fired O'Regan as well. In the meeting and in its motion to terminate, the Board gave no cause for the termination.

Ester and Lewis made immediate demand for payment of salary and benefits under the terms of their contracts. No payment was made. The Authority responded through counsel It did not assert that the discharges were for cause. It only alleged the amounts sought could not be verified because of alleged missing records in the Authority office. (Exhibits 18 and 19) Ester and Lewis sued to enforce the contract and asserting claims under Section 1983 of the Civil Rights Act.

### III. ARGUMENT

A.    The Standard For Summary Judgment Is Not Met Here.

Summary judgment is appropriate only if the pleadings, depositions, other discovery or affidavits show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure, Rule 56 (c). Even if the nonmoving

party bears the burden of proof at trial on the elements of a claim, at summary judgment the movant must show that there is an absence of evidence as to those elements. The nonmoving party need not establish that he will ultimately prevail on his claim. First National Bank of Arizona v. Cities Service Company, 391 U.S. 253, 88 S.Ct. 1575 (1986); Lavespere v. Niagra Machine & Tool Works, Inc., 910 F. 2nd 167, 178 (5th Cir. 1990).

When considering a motion for summary judgment, a district court is to credit the evidence of the non-movant and to draw all reasonable inferences in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253-254, 106 S.Ct. 2505, 2513 (1986); Thornbrough v. Columbus and Greenville R. R. Co., 760 F.2d 633, 640 (5th Cir. 1985). A party defending against summary judgment must have all their allegations taken as true and must receive the benefit of the doubt when their assertions conflict with those of the movant. Id. Summary judgment may be inappropriate in employment cases where issues involving inferences of intent and motive, which are largely factual questions, are important to the ultimate issue in the case. United States Postal Service Board of Governors v. Aikins, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482-83 (1983); Thornbrough, 760 F. 2d at 640-41. Virtually all of the Authority's contentions are based on facts that are clearly contested. As such, the motion for summary judgment should be denied.

B.    The St John The Baptist Parish Housing Authority Is Not Entitled to Eleventh Amendment Immunity.

The St. John the Baptist Parish Housing Authority is local government entity and not a state agency. As such, it is subject to suit under 42 U.S.C. § 1983. Defendants repeatedly and mistakenly claim that Plaintiffs' complaint terms the Board of Commissioners "a state agency" and that as a state agency the Board has Eleventh Amendment immunity from this suit. First, the complaint clearly and

6

correctly states that the Board is "a political subdivision of the State of Louisiana". See Complaint at paragraph 3; La. R.S. 40:384(15) and (16). Second, while the Eleventh Amendment bars suit in federal courts against states and state officials, this bar does not extend to counties and similar municipal corporations. Mt. Healthy School District v. Doyle, 429 U.S. 278, 280, 97 S.Ct 568, 572 (1977). Cities, counties, and other state political subdivisions are not considered "the state" for purposes of Eleventh Amendment immunity. City of Lafayette, La. v. La. Power & Light Co., 532 F.2d 431, 434 n.6 (5th Cir.1976), *cert. denied*, 430 U.S. 944, 97 S.Ct 1577 (1977). Independent local political subdivisions are not entitled to Eleventh Amendment immunity even if they exercise a "slice of state power." Jacintoport Corp. v. Greater Baton Rouge Port Comm'n, 762 F.2d 435, 438 (5th Cir.1985) *cert. denied*, 474 U.S. 1057, 106 S.Ct 797 (1986). The Eleventh Amendment only bars suits where the state is the real, substantial party in interest. Earles v. State Bd. Of Certified Pub. Accountants, 139 F.3d 1033, 1036-1037 (5th Cir.) *certiorari denied*, 119 S.Ct 444(1998). To be immune, the entity in question must be an alter ego of the state and stand in the shoes of the state itself. Id. Local government units, however, can be sued directly under §1983 for deprivation of constitutional rights. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690, 98 S.Ct 2018, 2035-2036.

Whether a particular entity is an arm of the state, immune from suit under the Eleventh Amendment, or a local government entity subject to suit depends in part upon "the nature of the entity created by state law." Mt. Healthy, 429 U.S. at 280, 97 S.Ct at 572. The Fifth Circuit looks to several factors to determine whether an entity is an immune "arm of the state" or whether it possesses an identity sufficiently distinct from the State of Louisiana to permit suit: (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of the entity's

funding; (3) the degree of local autonomy enjoyed by the entity; (4) whether the entity is primarily concerned with local or statewide problems; (5) whether the entity can sue or be sue in its own name; and (6) whether the entity has the right to hold and use property. Earles, 139 F.3d at 1037 (citations omitted). While these factors are not to be applied as a precise test, they help a court to balance the equities and determine as a general matter "whether the suit is in reality a suit against the state itself." Hudson v. City of New Orleans, 174 F.3d 677, 682, cert. denied 528 U.S. 1004, 120 S.Ct 498 (1999). Applying these factors, the Housing Authority is clearly a local government entity that may be sued under 42 U.S.C. § 1983.

      1.     Louisiana Statutes Characterize Housing Authorities as Local Government Entities.

The Louisiana Housing Authorities Law defines a "housing authority" as a "*local* housing authority" established by a municipality or parish pursuant to state law and whose operations are "local in nature." La. R.S. 40:384(15) and (16). Under the law, *only* the governing body of St. John the Baptist Parish could establish the Authority, upon a finding by the Parish that there is a shortage of safe, sanitary and affordable dwellings within that Parish. La. R.S. 40:393. The Authority was in fact established by such a resolution of the St. John the Baptist Parish Police Jury on August 19, 1965.[2]

      2.     The State Does Not Fund The Housing Authority.

Because one of the goals of the Eleventh Amendment is to protect state treasuries from the recovery of money in civil actions, this is the most important factor in determining whether the state is the real party in interest in litigation. The inquiry is whether the state is the source of an entities

---

[2]Exhibit 20, Extract of Minutes of August 19, 1965, St. John the Baptist Parish Police Jury.

funds. Pendergrass v. Greater New Orleans Expressway Com'n, 144 F.3d 342, 345 (5th Cir. 1998)

(citation omitted); Delahoussaye v. City of New Iberia, 937 F.2d 144, 147-48 (5th Cir.1991). Here,

the State of Louisiana provides no funding for the Housing Authority. The Housing Authorities Audit

and Statement of Revenues for 1998 reveals only federal funding, from HUD.[3]

Moreover, under Louisiana law, the State is not liable for the debts of the Authority. La. R.S.

40:403. Accordingly, any verdict rendered in this case would not be paid by the state of Louisiana.

Therefore, this factor weighs heavily against classifying the Housing Authority as an arm of the State

of Louisiana. See Pendergrass, 144 F.3d at 346.

### 3.    The Housing Authority Is Concerned Only With Local, Not Statewide Problems.

As noted above, under Louisiana law a  housing authority is an authority  established by a

municipality or parish whose  operations are "local in nature." La. R.S. 40:384(15) and (16). The

ordinance establishing the Housing Authority here addresses only the need for low-rent housing in

St. John the Baptist Parish.[4] The Authority clearly handles only housing issues in St. John the Baptist

Parish, and not statewide problems.   An entity that acts only for the special advantage of local

inhabitants does  not address a statewide problem. See Pendergrass, 144 F.3d at 347. Accordingly,

this factor weighs in favor of the Authority being a local and not a state authority.

---

[3] Exhibit 21, Financial Statements and Independent Auditors Reports for the Housing
Authority of St. John the Baptist Parish For the Year Ending September 30, 1998, at Exhibits B and
C and Note 3.

[4]Exhibit 20, Resolution of St. John The Baptist Parish Police Jury, 8/19/65.

9

4.    The Housing Authority Has A High Degree of Local Autonomy.

The Housing Authority enjoys a high degree of autonomy from the state. The Authority can issue bonds and other debt instruments and invest its funds as it chooses. La. R.S. 40:431(C)(7); La. R.S. 40:434. It has the ability to perform a substantial number of acts, including powers not enumerated in the state statutes. La. R.S. 40:431- R.S. 40:465; R.S. 40:431(C); R.S. 40:465. The Authority is not required to file its official annual report with any state authority higher than the St. John the Baptist Parish Clerk. La. R.S. 40:512. Moreover, its commissioners are not appointed by the Governor of Louisiana, but by the St. John the Baptist Parish President. La. R.S. 40:531(A); See also, Exhibit 20, Resolution Confirming Appointment of Commissioners, 8/19/65. Appointment by local governing bodies as opposed to the state indicates autonomy. Pendergrass, 144 F 3d at 347.

5.    The Housing Authority Can Sue and Be Sued In Its Own Name and Has The Right To Hold and Use Property.

Under Louisiana law the Housing Authority can sue and be sued in its own name. La. R.S. 40:431(C)(2). The Housing Authority can also hold and use property. La. R.S. 40:384(9); R S. 40:431(6) and (7). Both these factors favor a finding that the Housing Authority is not an arm of the state. See Pendergrass, 144 F.3d at 347.

Under the factors laid out by the Fifth Circuit, the St. John The Baptist Parish Housing Authority is a local entity, and not an arm of the state. As such, it has no Eleventh Amendment immunity and can be sued under 42 U.S.C. §1983. Defendants' Motion For Summary Judgment should be denied on this issue.

C.    The Individual Commissioners Of The Housing Authority Are Not Entitled To Qualified Immunity.

"When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees."" Anderson v. Crayton, 483 U. S. 635, 638, 107 S.Ct. 3034, 3038 (1987), citing, Harlow v. Fitzgerald, 457 U. S. 800, 814, 102 S.Ct. 2727, 2736 (1982). Because of concerns regarding the "social costs" as a result of these damage suits, the Supreme Court accommodates these conflicting concerns by providing government officials with qualified immunity only if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson, 483 U. S. at 638, 107 S. Ct. at 3038.

To establish that public officials are not entitled to qualified immunity, a three prong test is implemented. First, plaintiffs must assert a violation of a constitutional right. Second, the plaintiffs must show that the right was clearly established at the time of the action. Third, the plaintiffs must show that the officials' actions were objectively unreasonable. Eugene v. Alief Independent School District, 65 F.3d 1299, 1305 (5th Cir. 1995). Qualified immunity does not shield a public official if a reasonable person would have known that such conduct was unconstitutional. Alief at 1305. "Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action ... assessed in light of the legal rules that were "clearly established" at the time it was taken." (Citations omitted). Anderson, 483 U. S . at 639, 107 S. Ct. at 3038, citing, Harlow, 457 U. S. at 818-819, 102 S. Ct. at 2738-2739.

11

1.    The Plaintiffs Had A Constitutional Right To A Pre-Termination Hearing
Before Losing Their Civil Service Positions.

Opposing counsel concedes that tenured civil service employees have a property interest in their employment under Cleveland Board of Education v. Loudermill, 470 U.S. 532, 537 (1985). (See Defendant's Memorandum In Support of Motion For Partial Summary Judgment at p. 8). Civil service employees cannot be deprived of their positions without pre-termination notice and an opportunity to respond and state why a termination should not take place. Id. at 542-543. Opposing counsel also concedes that Ester and Lewis held such positions prior to their acceptance of unclassified jobs in 1993. The remainder of the Defendants' argument is that Ester and Lewis somehow "abandoned" their civil service positions while they were on leave without pay from them, during the time they held the Executive and Assistant Director's positions, and thus have no constitutional right to these "abandoned" jobs. Because there exists a dispute of fact whether either plaintiff abandoned or otherwise "lost" their civil service positions, summary judgment should not be granted on this issue.

a.    Ester Did Not Submit A Letter Of Resignation To The Department Of
Civil Service

Defendants first contend that Ester resigned her classified position by letter dated September 16, 1997, thus losing any constitutional protections for the position. Eula Vernell of the Louisiana Department of Civil Service testified, however, that this letter is not in Ester's civil service file, and was not received by civil service. Vernell confirmed that if the resignation is not submitted to Civil Service, there is no resignation. (Exhibit 3, pp. 19-20). Ester confirms that she did not recall sending the letter to Civil Service. (Exhibit 2, pp. 196;-197). Whether or not Ester resigned is a fact in dispute, and summary judgment cannot be granted on it.

12

     b.     <u>Plaintiffs Did Not "Lose" Their Civil Service Positions When They Did Not Renew Their Request For Leave Without Pay.</u>

Defendants next contend that Ester and Lewis "lost" their civil service positions when they failed to file paperwork to extend their leave without pay from the positions prior to the expiration of each yearly period of leave. Opposing counsel fails to note that several times previously Ester and Lewis had been permitted by the State to file their request for extension of their leave without pay after the leave time had already expired. (Exhibits 1 and 4). Opposing counsel further fails to note that after the dates in question here (September 16, 1997 for Ester and December 4, 1997 for Lewis) each had filed their requests for extension of leave without pay. (Exhibits 1 and 4 ). Accordingly, it is an issue of fact whether Ester and Lewis actions constituted "abandonment" their civil service positions.

More importantly, a civil service employee cannot lose their position due to failure to extend their leave of absence without the self same <u>Loudermill</u> hearing Defendants claim does not exist here! *See* Louisiana Civil Service Rule 11.27(e); Rule 12.7. It is undisputed that neither Ester nor Lewis were ever given notice of a proposed termination from their civil service positions. They were also deprived of an opportunity to respond to any alleged grounds for any such termination. (See Exhibit 3, pp. 27-28).

In summary, because Ester and Lewis never had a <u>Loudermill</u> hearing (on the grounds that they had not extended their leaves without pay), they could not have been terminated from their civil service positions. Since they were never properly terminated from their civil service positions, they had a constitutional right to a <u>Loudermill</u> hearing, before the Defendants could terminate them from their positions. Defendants' Motion for Summary Judgment on the absence of any constitutional

right should be denied for this reason.

        2.    The Constitutional Right To Procedural Due Process Is Clearly Established.

The constitutional right to procedural due process is clearly established under the law. Defendants properly state that a right is "clearly established" if it is sufficiently clear that a reasonable official would understand that what he is doing violates the right. Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000). Again, the issue is a question of law. Id. It is clear, as previously discussed, the plaintiffs had a constitutional right to procedural due process under the longstanding Supreme Court decision in Loudermill. To suggest that the Commissioners newness in their position somehow alleviates them from the obligation to behave as a "reasonable official" would effectively dismantle the fact that the "clearly established" hurdle is a question of law. It is irrelevant whether the individuals were ignorant of their obligations under the law.

In fact, in this case, HUD and local parish officials requested that the newly commissioned Board forestall from any business, particularly serious business, as a result of their lack of knowledge. HUD specifically requested that that training be conducted in order to allow the commissioners to be educated about their obligations under the law. (Exhibit 22). Additionally, Parish President Arnold Labat testified that he circulated letters to the commissioners prior to the September 13 meeting specifically asking them to forestall from serious business as a result of their lack of training. (Exhibit 23, p. 218). In fact, Commissioner Francisco conceded that Labat had made this request. (Exhibit 24, pp. 25-27). Nevertheless, Francisco seconded the motion to terminate the entire administrative staff of the Authority no less than three hours later.

Defendants assert that the actions taken at the September 13 meeting did not affect the civil service employment rights of Ester and Lewis. Clearly, this contention is ludicrous. Ester and Lewis

were terminated from employment. Their keys were confiscated, and they were escorted from the premises by police officers. The message to Ester and Lewis was clear; they were not to return to Authority premises. The actions of the commissioners violated a clearly established right in light of the fact that Loudermill was a clearly established standard requiring pre-termination notice and an opportunity for hearing.

3.    The Actions Of The Board Of Commissioners Did Not Meet The Necessary Standard Of "Objective Legal Reasonableness."

Whether state officials enjoy qualified immunity turns on the "objective legal reasonableness" of their conduct, assessed in light of the legal rules that were clearly established at the time of their actions. The inquiry turns on whether a reasonable official would have known that a termination of civil service protected employees with a complete absence of pre-termination notice and an opportunity for hearing violated clearly established due process rights. Price v. Brittain, 874 F. 2d 252, 260 (5th Cir. 1989). In this case, any "reasonable" official would have known that procedural due process rights were well established under the Loudermill standard. In fact, Morris had experience with employees seeking redress through the exercise of their civil service rights. (Exhibit 25, pp. 255-257). Nevertheless, Morris failed to mention this information during the course of the three hour meeting at which the termination action occurred

Defendants argue that the September 13, 1999 meeting was the first official meeting of the new Board of Commissioners. Defendants point out that Young and Francisco were both new commissioners with relatively no experience. As previously discussed, the decision of Francisco and Young to act while being completely untrained was an unreasonable one demonstrating the basis for denial of qualified immunity. This is especially true in light of the repeated requests that they forestall

15

action to be provided with appropriate training.[5]  See Argument supra.

Put simply, defendants seek to change the standard which should be applied for qualified immunity from "objective legal reasonableness" to a "subjective" standard.  In this case by arguing that the commissioners were ignorant, defendants hope to avoid the scrutiny that this court should apply as to whether their actions would meet an objective reasonableness standard.  Using the argument made by defendants, public officials would appoint the most ignorant individuals they could find to serve in positions of authority in the hopes of avoiding legal liability.  For this exact reason, the law has applied an objective standard.  The actions by Young, Francisco, and Morris were not only unreasonable but were subjective and failed to meet the standard required by the law to obtain qualified immunity protections.[6]

D.    Dismissal Of The State Law Claim Should Not Occur.

Because the 1983 claims should survive summary judgment, dismissal of the pendant state law claims is inappropriate herein.  Even if this court should find that summary judgment is warranted for Section 1983 claims, this court has discretion to retain jurisdiction on the state law claims.  Plaintiffs

---

[5]Defendants self serving testimony regarding Francisco's "halting" English belies Francisco's experience.  Rather than being an individual who struggled with the English language, Francisco was a long term successful businessman in St. John Parish.  A simple review of the deposition reveals that Francisco had no difficulty in communicating through the deposition, and language was certainly not a barrier to his understanding during the course of the September 13 meeting.  (Exhibit 24, pp. 9-11).

[6]The fact that the Commissioners were informed that they could terminate Ester and Lewis from their administrative positions for cause does not relieve them from the obligation they had to provide procedural due process for the civil service positions retained by Ester and Lewis through leaves without pay.  Young and Francisco reviewed nothing prior to making the decisions to terminate to learn their legal obligation.  (Exhibit 24, pp. 28-31; Exhibit 26, pp. 48-50).  In fact, Young and Francisco acted out of ignorance rather than knowledge.  This oversight is not the fault of the plaintiffs in this case but the defendants.  The qualified immunity standard has not been met.

suggest that retention of the state law claims is appropriate in light of the circumstances of this case.
Plaintiffs are less than a month from trial. Virtually all discovery has been conducted, and the parties
are in the final trial preparation. To dismiss this case for remand to the state court would result in
an onerous delay to the plaintiffs who have waited a long period of time for their day in court. Still
further, the interest of judicial economy would be best served by the federal court, who is already
knowledgeable about the facts and circumstances of this case, retaining jurisdiction for purposes of
trial. As this is in the sole discretion of the district court, jurisdiction of the state claim should be
maintained and the matter scheduled for trial.

## IV.  CONCLUSION

Based on the foregoing, the Section 1983 claims against the Board of Commissioners cannot
be dismissed. There exists material facts that remain in dispute rendering the Section 1983 claim one
that must be presented to a trier of fact. Further, the defendant cannot establish that qualified
immunity should be present to the commissioners in their individual capacity. Finally, the state law
pendant claims continue to have a basis in jurisdiction in light of the survival of the Section 1983
claims. The summary judgment motion of the defendants and the motion to dismiss without prejudice
must be denied.

17

Respectfully submitted,

ROBEIN, URANN & LURYE, P.L.C.

Julie Richard-Spencer (Bar No. 20340)
P. O. Box 6768
2540 Severn Avenue, Suite 400 (70002)
Metairie, Louisiana 70009-6768
Telephone:  (504) 885-9994
Facsimile:  (504) 885-9969


## CERTIFICATE OF SERVICE

I certify that the above and foregoing has been served on:

Richard B. Ehret
Rodney, Bordenave, Boykin, Bennette & Boyle
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130

by depositing same in the United States mail, postage prepaid, this 1st day of March, 2000.

Julie Richard-Spencer

F:\APPS\WP51\SHERON\Ester-Lewis\P-2001\omsj&md.wpd

18

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NUMBER: 00-0362 |
| | * | |
| ST. JOHN THE BAPTIST PARISH | * | SECTION: K |
| HOUSING AUTHORITY, SHEILA MORRIS, | * | |
| PEDRO FRANCISCO, EULA YOUNG, | * | MAG. 2 |
| STELLA BORNE, and ALEXANDER WHITE | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * **

## RESPONSE TO STATEMENT OF UNCONTESTED FACTS

1.    Statement Number 1 is admitted.

2.    Statement Number 2 is admitted.

3.    Statement Number 3 is denied. Ester submitted SF-1 civil service forms on an irregular basis even while each one extended her leave without pay status for one year increments. These forms were actually submitted on the following dates: November 8, 1993, December 6, 1993, January 15, 1997, and April 9, 1998. (See Exhibit 1).

4.    Denied. (Exhibit 2, Ester dep. pp. 195-197; Exhibit 3, Vernell dep. pp. 19-20).

1

5.     It is admitted that Ester was in the position of Project Manager I when she took leave without pay.  It is denied that Ester resigned from this position on September 17, 1997.  (Exhibit 1; Exhibit 2, pp. 195-197, Exhibit 3, pp. 19-20).

6.     Statement Number 6 admitted.

7.     It is admitted that Lewis submitted SF-1 civil service forms on an irregular basis even while each one extended her leave without pay status for one year increments.  These forms were submitted on November 22, 1993, December 6, 1993, January 15, 1997, and February 13, 1998.  All other statements in paragraph 7 are denied.  (See Exhibit 4).

8.     It is admitted that Patrena Ester was the appointing authority for the housing authority.

9.     The statements in Paragraph 9 are admitted.

10.    The statements in Paragraph 10 are admitted.

11.    The statements in Paragraph 11 are admitted.

12.    The statements in Paragraph 12 are admitted.

13.    While it is acknowledged that the Board of Commissioners did not approve Clara Lewis' contract signed on September 1, 1999, it is denied that the Board of Commissioners were required to approve the contract of employment or served as Clara Lewis' supervision.  Instead, Patrena Ester, the Executive Director, had the authority to execute contracts of employment with her.  (Exhibit 5; Exhibit 6, pp. 85-86, 90-92; Exhibit 2, pp. 72, 109).

14.    It is admitted that Ester and Lewis were terminated from their unclassified jobs as Executive Director and Assistant Executive Director on September 13, 1999.  It is further admitted that Ester and Lewis were removed from the premises, required to submit their keys to the Board of

2

Commissioners and escorted out of the premises by police. It is admitted that Ester and Lewis were not allowed the opportunity to return to their civil service positions. All other statements in paragraph 14 are denied. (Exhibit 7, pp. 22-23).

      15.    The statements of paragraph 15 are admitted.

                       Respectfully submitted,

                       ROBEIN, URANN & LURYE, P.L.C.

                       Julie Richard-Spencer (Bar No. 20340)
                       P. O. Box 6768
                       2540 Severn Avenue, Suite 400 (70002)
                       Metairie, Louisiana 70009-6768
                       Telephone: (504) 885-9994
                       Facsimile: (504) 885-9969

## CERTIFICATE OF SERVICE

      I certify that the above and foregoing has been served on:

Richard B. Ehret
Rodney, Bordenave, Boykin, Bennette & Boyle
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130

by depositing same in the United States mail, postage prepaid, this 1st day of March, 2000.

                       Julie Richard-Spencer

F.\APPS\WP51\SHERON\Ester-Lewis\P-2001\resp-stat-uncon-facts.wpd

3

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED