

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR -2 PM 4: 50

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | ) | CIVIL ACTION NO. 00-362 |
| | ) | |
| VERSUS | ) | SECTION "K" |
| | ) | |
| ST. JOHN THE BAPTIST PARISH | ) | MAGISTRATE "2" |
| HOUSING AUTHORITY, SHEILA | ) | |
| MORRIS, PEDRO FRANCISCO, EULA | ) | |
| YOUNG, STELLA BORNE AND | ) | |
| ALEXANDER WHITE | ) | |

**ST. JOHN THE BAPTIST PARISH HOUSING AUTHORITY,
SHEILA MORRIS, PEDRO FRANCISCO, EULA YOUNG,
STELLA BORNE AND ALEXANDER WHITE
MOTION FOR LEAVE TO FILE REPLY MEMORANDUM
TO PATRENA ESTER'S AND CLARA LEWIS' OPPOSITION MEMORANDUM**

**COME NOW,** defendants, St. John the Baptist Parish Housing Authority, Sheila

Morris, Pedro Francisco, Eula Young, Stella Borne and Alexander White and files this Motion for

Leave of Court to File its Reply Memorandum to Patrena Ester's and Clara Lewis' Opposition

Memorandum. Plaintiffs' Opposition contains improper allegations and misstatements of fact which

require a reply from Defendants.

Fee_____
Process_____
X Dktd _____
CtRmDep_____
Doc.No._____

**WHEREFORE,** Defendants respectfully requests that the Court grant it leave to file its Reply Memorandum to plaintiffs' Opposition Memorandum.

Respectfully submitted this ___ day of March, 2001.

RICHARD B. EHRET (16901)
RODNEY, BORDENAVE, BOYKIN & EHRET
A Professional Law Corporation
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 527-5450

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by facsimile and by mailing the same to the following addresses, postage prepaid this ___ day of March, 2001.

Julie Richard-Spencer, Esq.
Robein, Urann & Lurye, P.L.C.
P.O. Box 6768
2540 Severn Avenue, Suite 400
Metairie, Louisiana 70009-6768
Facsimile: (504) 885-9969

RICHARD B. EHRET

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRENA ESTER AND CLARA LEWIS ) | CIVIL ACTION NO.  00-362 |
| ) | |
| VERSUS                        ) | SECTION "K" |
| ) | |
| ST. JOHN THE BAPTIST PARISH    ) | MAGISTRATE "2" |
| HOUSING AUTHORITY, SHEILA      ) | |
| MORRIS, PEDRO FRANCISCO, EULA  ) | |
| YOUNG, STELLA BORNE AND        ) | |
| ALEXANDER WHITE               ) | |

**O R D E R**

Considering Defendants' Motion for Leave to File its Reply Memorandum to Plaintiffs' Opposition Memorandum;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that leave of Court is granted to Defendants to file its Reply Memorandum to Plaintiffs' Opposition Memorandum.

_____
JUDGE, UNITED STATES DISTRICT COURT

File Unsigned.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRENA ESTER AND CLARA LEWIS | ) | CIVIL ACTION NO.  00-362 |
| | ) | |
| VERSUS | ) | SECTION "K" |
| | ) | |
| ST. JOHN THE BAPTIST PARISH | ) | MAGISTRATE "2" |
| HOUSING AUTHORITY, SHEILA | ) | |
| MORRIS, PEDRO FRANCISCO, EULA | ) | |
| YOUNG, STELLA BORNE AND | ) | |
| ALEXANDER WHITE | ) | |

## <u>REPLY MEMORANDUM</u>

**MAY IT PLEASE THE COURT:**

Without reiterating the legal arguments presented in the Memorandum attached to the Motion for Partial Summary Judgment and Motion to Dismiss, undersigned counsel hereby responds to several arguments in plaintiffs' Opposition Memorandum.

Section 12 of Article X of the Louisiana Constitution places exclusive original jurisdiction to adjudicate removal of classified employees in the State Civil Service Commission, with the attendant power to appoint referees to hear and decide cases.  Further, Section 12 of Article X grants classified employees the right to an administrative appeal from the commission-appointed referee's decision to the commission itself, with the further right to judicial review in the state circuit

```
_____Fee_____
_____Process_____
  X  Dktd_____
  ✓ CtRmDep_____
_____Doc,No._____
```

courts of appeal.  See Louisiana Department of Agriculture and Forestry v. Sumral, 728 So.2d 1254

(La. 1999).  The Defendant Commissioners did not terminate or otherwise affect the plaintiffs' civil

service status at the September 13, 1999 meeting.  Section 539(C) of Title 40 is quite clear that state

Commissioners of housing authorities have no control over their classified personnel.  Consequently,

the plaintiffs' "civil service employment" as the constitutional right subject to the Section 1983

claim is bogus.  Moreover, it is undisputed that after September 13, the plaintiffs never "appealed"

to the State Civil Service Commission to seek reinstatement to alleged classified civil service jobs.

Indeed, both Ms. Ester and Ms. Lewis met with the attorney for the State Civil Service Commission

yet never filed an administrative appeal of any alleged improper actions by the Defendant

Commissioners.   See Ester deposition, pages 59-60 and Lewis deposition pages 102-04 attached

hereto as *in globo* Exhibit "1".  Simply put, assuming the plaintiffs retained classified civil service

rights while working in their unclassified jobs and the Defendant Commissioners somehow affected

those rights, the plaintiffs knew the appeal procedures available to them yet they failed to exercise

those rights prior to filing suit in a court without jurisdiction.

        The plaintiffs also contend their employment contract/unclassified job termination

is also protected by Section 1983.[1]  There is no dispute that the defendant Commissioners terminated

the plaintiffs from their unclassified jobs at the September 13, 1999 meeting.  This meeting,

_____

        [1]Defendants contend that Ms. Lewis did not have an employment contract since it was
entered into without Board approval.

2

however, constituted a hearing and in fact, the plaintiffs' private attorney participated at this meeting

so there was no denial of procedural due process. Assuming arguendo that the court finds the

meeting was not a "hearing" and that there was a violation of a clearly established property right of

which a reasonable person would have known, the plaintiffs still have not established a denial of the

property right without due process. "When a plaintiff alleges that he has been deprived of property

because of the random and unauthorized acts of government officials and seeks a post-deprivation

remedy, there is no denial of due process if the state provides adequate post deprivation remedies."

Copsey v. Swearingen, 36 F.3d 1336, 1342 (5th Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527

(1981) overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); Caine v. Hardy,

943 F.2d 1406 (5th Cir. 1991) (en banc). The plaintiffs have not demonstrated that Louisiana state

law affords them an inadequate remedy to their breach of contract claim.[2] As noted by Judge

Wilkinson in Robinettte v. Delgado Community College, 2000 W.L. 1720553, pg. 7, (E.D. La, Nov.

17, 2000) "in lapses of evidence to the contrary, we must presume that the Louisiana court system

is capable of addressing violations of state law." Citations omitted. A copy of Robinette is attached

hereto as Exhibit "2." Again, as Judge Wilkinson noted, "if defendants' action in depriving or

conspiring to deprive plaintiff of property were negligent or intentional, state tort law provides an

adequate post-deprivation remedy." Id. Ms. Ester and Ms. Lewis have post-deprivation remedies

---

[2]This same argument about a post deprivation remedy applies to their state civil service claim
as well. As paraded in the preceding paragraph, the plaintiffs have remedies under the Louisiana
Constitution and the state civil service rules to protect their alleged civil service jobs.

and in fact, have exercised them: they filed state law claims for breach of their employment contracts. Consequently, assuming the defendant Commissioners lose on all the constitutional arguments and all of the elements of proof for qualified immunity, their motion for summary judgment should still be granted since the plaintiffs have adequate post-deprivation remedies that they are now vigorously pursuing.

Finally, plaintiffs' opposition cites many facts that though compelling, are not material to focus of a Section 1983 claim. It is undisputed that the defendant Commissioners do not have the statutory authority to affect the plaintiffs' civil service rights and that the plaintiffs knew this fact since Ms. Ester performed the civil service actions on behalf of all the classified employees of the Housing Authority. For the plaintiffs now to claim an entitlement to the <u>Laudermill</u> hearing in court is a mockery of the civil service system. For this reason alone, defendants are entitled to dismissal of the Section 1983 claim.

Respectfully submitted this _2_ day of _____

RICHARD B. EHRET (16901)
RODNEY, BORDENAVE, BOYKIN, & EHRET
A Professional Law Corporation
400 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 527-5450

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by mailing the same to each party, properly addressed and postage prepaid this ___2___ day of March, 2000.

RICHARD B. EHRET

5

1

UNITED STATES DISTRICT COURT

2

EASTERN DISTRICT OF LOUISIANA

3

4

5    PATRENA ESTER AND CLARA LEWIS      CIVIL ACTION NO. 00-362

6    VERSUS

7    ST. JOHN THE BAPTIST HOUSING       SECTION: K

8    PARISH AUTHORITY, SHEILA MORRIS,

9    PEDRO FRANCISCO, EULA YOUNG,

10   STELLA BORNE AND ALEXANDER WHITE

11

12

13                    *    *    *    *    *    *

14

15

16                The deposition of **PATRENA BURKE ESTER**,

17   given in the above-entitled cause, pursuant to the

18   following stipulation, before Dorothy N. Gros, a

19   Certified Court Reporter, authorized to administer oaths

20   and take depositions, given at Robein, Urann & Lurye,

21   P.L.C., 2540 Severn Avenue, Suite 400, Metairie,

22   Louisiana, on Tuesday, October 17, 2000, beginning at

23   9:25 a.m.

24

25



EXHIBIT

" 1 "

59

1    reference to maintaining their units when, in fact,

2    nothing was really done.  As far as her failing to

3    cooperate with the Resident Council, she would -- they

4    would try to have meetings with her, for her to be a part

5    of the meetings.  She would not show up.  They had

6    meetings with the HUD office.  They met with Mr.

7    Arceneaux at one point.  While they're attending

8    meetings, once they leave -- I think they had a meeting

9    in New Orleans.  When she left there, she ended up going

10   back to the same people to overturn what they had

11   communicated to the other residents.  So, it was ongoing

12   with her.

13       Q.   Forty-four and Forty-five, Leo Johnson and Diane

14   Jackson, do you know why you have them on your list here?

15       A.   I listed them as employees of the agency.  Diane

16   was having some serious -- Diane and Leo both were having

17   serious problems with Peter Jackson.

18       Q.   And what kind of problems?

19       A.   While he was an employee there, there was a lot

20   of friction between he and Diane, as well as Leo.

21       Q.   Robert Boland, 51, when did you meet with him?

22       A.   I met with him in '99.  I don't exactly remember

23   the month.

24       Q.   Was it after your termination?

25       A.   It was before.

60

1    Q.   And why did you meet him?

2    A.   At that point, I felt that the Board of

3    Commissioners, because of their interferences with

4    circumventing, my responsibilities to the various jobs

5    that I held was in the Housing Authority.  And I watned

6    to know from him, what could he suggest that I do in the

7    aspect of protecting my job.

8    Q.   So, you thought your job was in jeopardy at that

9    point?

10   A.   Yes.  And also, I was having some serious

11   problems with Peter.  I had spoke with Ms. Eula Vernell

12   and I asked her, was there anyone else that I could

13   communicate with and she referred me to their State Civil

14   Service attorney.

15   Q.   And that was Mr. Boland?

16   A.   Yes.

17   Q.   And did you meet him up in Baton Rouge?

18   A.   Yes.

19   Q.   Carla Stergin, 54.  You have down here, can

20   testify regarding failure of the Authority to offer COBRA

21   to you and Ms. Lewis.

22   A.   I had communicated with Carla in reference to

23   our termination.  I wanted to know about what the -- what

24   would happen if our rights were violated in that aspect,

25   and she informed me that as far as she was concerned, we

ORIGINAL

1                  UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5    PATRENA ESTER AND CLARA LEWIS      CIVIL ACTION NO. 00-362

6    VERSUS

7    ST. JOHN THE BAPTIST HOUSING       SECTION: K

8    PARISH AUTHORITY, SHEILA MORRIS,

9    PEDRO FRANCISCO, EULA YOUNG,

10   STELLA BORNE AND ALEXANDER WHITE

11

12

13                    *    *    *    *    *    *

14

15

16             The deposition of **CLARA S. LEWIS**, given in

17   the above-entitled cause, pursuant to the following

18   stipulation, before Dorothy N. Gros, a Certified Court

19   Reporter, authorized to administer oaths and take

20   depositions, given at Robein, Urann & Lurye, P.L.C., 2540

21   Severn Avenue, Suite 400, Metairie, Louisiana, on

22   Wednesday, October 18, 2000, beginning at 10:25 a.m.

23

24

25

102

1    Q.    -- that?  Okay.  Thank you.  Does Mr. Edward

2    Jackson still work at the Housing Authority?

3    A.    No, sir.

4    Q.    Was he fired?  Do you know?

5    A.    Not that I know of.

6    Q.    Do you know when he left the Housing Authority?

7    A.    No, I do not.

8    Q.    Do you know why he left the Housing Authority?

9    A.    No, I do not.

10   Q.    When's the last time you talked to Mr. Jackson?

11   A.    I have not talked to Mr. Jackson in a long time.

12   Q.    Have you talked to him since you were

13   terminated?

14   A.    I talked to him one time in a previous

15   statement, what I told you when we talked, when he asked

16   me about HUD and what to do, he needs to call them.

17   Q.    I remember that.  Thank you.  Mr. Barnett, you

18   weren't involved in Ms. Ester's hiring of Mr. Barnett?

19   A.    No, sir.

20   Q.    No. 51, Robert Boland, when did you meet with

21   him to discuss issues at the agency on that Council?

22   A.    We went to Baton Rouge.  I can't remember when

23   we went, but I know we went to Baton Rouge.

24   Q.    This was before you were terminated?

25   A.    Yes.

1    Q.   Was this before Ms. Ester was terminated in

2    August by Mr. LaBat?

3    A.   Yes, sir.

4    Q.   And who requested the meeting?

5    A.   We did.

6    Q.   And what did you discuss?

7    A.   Well, Ms. Ester did most of the discussing.  She

8    just -- she was getting a legal opinion from him on the

9    basis of Civil Service, on that aspect.  She wanted

10   to -- she was just getting his legal opinion.

11   Q.   About what?  I'm sorry.

12   A.   About the Civil Service issues.  She was getting

13   legal opinion from him, because he's an attorney.

14   Q.   What's Civil Service issues?

15   A.   I mean --

16   Q.   Issues of employees, or issues involving you and

17   Ms. Ester?

18   A.   I think it was both issues.  I think it was for

19   the employees and for ourselves.

20   Q.   What were the issues concerning you and Ms.

21   Ester?

22   A.   Well, I think --

23   Q.   -- that you discussed with him --

24   A.   -- we wanted to know like, if we reverted back

25   to the classified position, what we needed to do.

104

1    Q.   And so, you discussed that issue with Mr.

2    Boland?

3    A.   Yes.

4    Q.   And what did he tell you?

5    A.   I can't recall.  He probably gave us some -- the

6    Civil Service Rule or told us what rule to go back and

7    look at, because they always did refer back to the rule.

8    Q.   And why did you go discuss?  You all were

9    concerned about your jobs when you went to see him?

10   A.   I would say, yes.  Ms. Ester was a little bit

11   more concerned about her job, because there were more

12   attempts at her than it was at me.

13   Q.   Was this before or after the HUD report, if you

14   know?

15   A.   It was before.

16   Q.   Was it in 1999, when you went to see Mr. Boland?

17   A.   Probably 1998.

18   Q.   And did you see him any other time --

19   A.   -- no, I didn't --

20   Q.   -- beside that time?

21   A.   I did not.

22   Q.   Did you talk to him any other time beside --

23   A.   -- I did not.

24   Q.   Carla Sturgeon, 54.  Did you talk to Ms.

25   Sturgeon about COBRA coverage?

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

**Jerry L. ROBINETT**
v.
**DELGADO COMMUNITY COLLEGE et al.**

**No. Civ.A.99-2545.**

Nov. 17, 2000.

ORDER AND REASONS

WILKINSON, J.

*1 Plaintiff, Jerry L. Robinett, filed this pro se and in forma pauperis complaint [FN1] against defendants, Delgado Community College, the Board of Supervisors of the Louisiana Community and Technical College System and the Board of Supervisors of the University of Louisiana System, alleging causes of action under Title IV of the Higher Education Act, 20 U.S.C. § 1701 et seq.; 42 U .S.C. § 1983; and the Fourteenth Amendment to the United States Constitution. Record Doc. No. 16.

> FN1. Pro se civil rights complaints must be broadly construed, Moore v. McDonald, 30 F.3d 616, 620 (5th Cir.1994), ＊ and I have broadly construed the complaint in this case.

Robinett's amended complaint asserted three claims: (1) Defendants violated the Higher Education Act by disqualifying him from receiving federal financial aid, failing to credit him with financial aid funds already received or approved and refusing to allow him to register for classes at Delgado to finish his second associate's degree program; (2) defendants denied him substantive due process by denying his right to federal Pell Grant funds and his right to a public education; and (3) defendants denied him procedural due process by providing an inadequate process to appeal these decisions. He seeks injunctive and monetary relief. Id.

The above named defendants previously moved for summary judgment on all of plaintiff's claims. Record Doc. No. 24. While that motion was under advisement, Robinett filed a motion for leave to "supplement" his complaint and for sanctions against

defendants. He seeks to amend his complaint for a third time to add as defendants "other State employees unknown" and to allege a conspiracy to disqualify him from receiving financial aid. He also sought sanctions for defendants' failure to consent to the amendment. Record Doc. No. 36.

The Court granted summary judgment to defendants on Robinett's first claim because he has no private right of action against any defendant under the Higher Education Act and because the existing defendants are entitled to sovereign immunity under the Eleventh Amendment on that claim. Record Doc. No. 41 at pp. 5-12. The Court granted summary judgment to defendants on Robinett's second and third claims for retroactive injunctive relief and for monetary relief, which are also barred by the Eleventh Amendment. Id. at p. 12.

However, the Court found that the Eleventh Amendment would not preclude Robinett from bringing the instant suit if he seeks prospective injunctive relief against state officials in their official capacities. Id. at pp. 13- 15. Plaintiff's second amended complaint seeks prospective injunctive relief. Counsel for defendants advised the Court during a status conference that, if Robinett were allowed to amend his complaint a third time, any individual defendant employees named therein would be represented by the same counsel and would assert the defense of qualified immunity.

Therefore, the Court deferred consideration of plaintiff's motion to amend, stayed all discovery and ordered plaintiff to file a statement pursuant to Fed.R.Civ.P. 7(a) and Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995), delineating the factual basis of his due process claims and naming those state officials whom he seeks to add as defendants. Record Doc. No. 40. Defendants were ordered to file a second motion for summary judgment concerning plaintiff's remaining due process claims and the qualified immunity defense, after plaintiff filed his Rule 7(a) statement. Id.

*2 Plaintiff filed his Rule 7(a) statement and defendants filed a second motion for summary judgment. Record Doc. Nos. 44, 46. Defendants' second motion is supported by deposition excerpts, sworn affidavits and certified copies of exhibits as required by Fed.R.Civ.P. 56(e). Robinett filed a timely opposition memorandum, supported by his

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



own notarized "statement of uncontested facts,"
deposition transcripts and documentary exhibits
accompanied by his own affidavit verifying them.
Record Doc. Nos. 47, 48, 49 and 50.

Having considered the record, the arguments of the
parties and the applicable law, IT IS ORDERED
that defendants' motion for summary judgment is
GRANTED and that plaintiff's motion to amend his
complaint and for sanctions is DENIED.

I. FACTUAL BACKGROUND

The following facts are accepted as undisputed,
solely for purposes of the pending motion for
summary judgment. Robinett enrolled at Delgado
Community College ("Delgado") in 1990 and
completed a two-year associate degree in computer
science in December 1993. He received federal
financial aid during his attendance in that program.

In January 1994, plaintiff began a second, two-year
associate degree program in drafting at Delgado.
Delgado's financial aid office approved his
application to receive federal financial aid, known as
a "Pell Grant," for the fall and spring semesters of
the 1994-1995 school year in the amounts of $288
and $287, respectively. Defendants' Exh. VI,
affidavit of Chibuike U. Azuoru, Director, Internal
Audit, Delgado Community College, and attached
award letter dated August 12, 1994.

During the fall 1994 semester at Delgado, although
he had completed only 12 hours toward his drafting
degree, Robinett had exceeded a total of 95 credit
hours attempted at Delgado, including the hours he
had attempted in both his degree programs.
Defendants' Exh. III, affidavit of Germaine D.
Edwards, Director of Office of Student Financial
Assistance at Delgado City Park Campus, and
attached Exh. C. Delgado therefore notified him in
January 1995 that, pursuant to its "Satisfactory
Academic Progress" financial aid policy, he was no
longer eligible for federal financial assistance,
including the $287 Pell Grant that had been
previously approved for the spring 1995 semester.
Plaintiff's Exh. P, deposition of Sandra Spraglin,
Director of the Office of Student Financial
Assistance for Delgado, at 85-86.

Robinett appealed this decision in writing to Sandra
Spraglin. Defendants' Exh. III, Edwards affidavit

and attached Exh. A. His appeal was considered by
a three- to five-person Delgado committee without a
live hearing. The committee affirmed his
disqualification by letter dated February 13, 1995,
and his subsequent appeals were denied by letters
from the appeals committee dated March 13, and
May 20, 1995. Id.

Despite the lack of any additional formal appeal
procedures, Robinett complained about the decision
in 1995 to Dr. Ione Elioff, President of Delgado
College, and to Dr. C.B. Ellis, Delgado's Vice
President of Student Affairs. Plaintiff also wrote and
spoke to David Nicklas, Vice President of Finance
and Administration for the University of Louisiana
System, who referred his complaint to Dr. Ellis.
Plaintiff's Exh. R, Nicklas deposition at 21-22,
25-26. At some point, Robinett also called Dr. Jerry
Pinsel, executive assistant to the president of the
Louisiana Community and Technical College
System, who called Katherine Sippola, Delgado's
Vice Chancellor for Student Affairs, on his behalf.
Plaintiff's Exh. U, Pinsel deposition at 8-9, 17-18.
Dr. Ellis reviewed plaintiff's file and spoke with
members of the Financial Aid Office and with
Nicklas. She upheld plaintiff's disqualification.
Defendants' Exh. III, Edwards affidavit, attached
Exh. A, a letter from Dr. Ellis to plaintiff dated June
7, 1995.

*3 Robinett also met in 1999 with Dr. Elioff's
successor, Dr. J. Terrence Kelly, to request
reconsideration of the financial aid committee's
decision to disqualify him from receiving further
Pell Grants. Dr. Kelly did not overrule the
committee because he believes that appropriate
procedures were followed and that the decision
complied with federal, state and Delgado policies.
Defendant's Exh. I, Chancellor Kelly's affidavit.

Before the start of the 1999-2000 school year,
Robinett applied to the federal government for
federal grant assistance to attend Delgado and
received from the government a Student Aid Report
dated July 14, 1999, which stated that he "may be
eligible" for a Pell Grant based on the information
he had provided but that his final eligibility would be
determined by the college's financial aid
administrator. Defendants' Exh. H. However,
Delgado refused to rescind his disqualification for
financial aid, based on its "Satisfactory Academic
Progress" policy in effect in 1999.

Copr. © West 2001 No Claim to Orig. U.S Govt. Works

Plaintiff alleges in his Rule 7(a) statement, his memorandum in opposition to the summary judgment motion and his proposed third amended complaint that a Delgado accounting department employee stole Pell Grant and other grant checks from Delgado beginning in January 1995, around the same time that plaintiff's financial aid was denied, and continuing until September 1997. [FN2] He "believes and hopes to prove" that these facts are connected and "hopes to prove that there was a conspiracy at Delgado involving persons in the accounting department, the Finance Office, and in the administration to defraud students of their federal grant money .... [and] that the true motive behind his unlawful disqualification was theft of his Pell grant money." Plaintiff's Rule 7(a) Pleading, Record Doc. No. 44, ¶ 7.

> FN2. That individual pled guilty and was convicted in this Court of one count of theft concerning programs receiving federal funds. United States v. Japenia Trim Poret, Crim. Action No. 99-133"S". Her sentence included restitution of more than $44,000 to Delgado. Id. Record Doc. No. 18.

## II. ANALYSIS

### A. Summary Judgment Standards

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Edwards v. Your Credit, Inc., 148 F.3d 427, 431 (5th Cir.1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

> When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or

is not significantly probative, summary judgment may be granted."
*4 Thomas v. Barton Lodge II, Ltd., 174 F.3d 636, 644 (5th Cir.1999) (citing Celotex Corp., 477 U.S. at 322-23; quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson, 477 U.S. at 248. Facts that are not material or necessary to the case will not preclude summary judgment. Gibson v.. Rich, 44 F.3d 274, 277 n. 7 (5th Cir.1995). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir.1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex Corp., 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

The Court must consider all evidence in the light most favorable to the nonmoving party. National Ass'n of Gov't Employees, 40 F.3d at 712-13. "Conclusory allegations unsupported by specific facts, however, will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without any "significant probative evidence tending to support the complaint." ' " Id. at 713 (quoting Anderson, 477 U.S. at 249).

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards, 148 F.3d at 432; accord Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id. (emphasis in original). "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

support a judgment in favor of the nonmovant." Id. (quotation omitted) (emphasis in original).

B. Some of Plaintiff's Due Process Claims Have Prescribed

Robinett filed his complaint in this Court on August 20, 1999. Defendants argue that his claims arising from incidents that occurred in 1994-1995 have prescribed.

Although Section 1983 has no statute of limitations, the Louisiana prescription statute is applicable to suits in federal court under Section 1983. Moore v. McDonald, 30 F.3d 616, 620 (5th Cir.1994); Washington v. Breaux, 782 F.2d 553, 554 n. 1 (5th Cir.1986). Louisiana law provides for a one-year prescriptive period from the date of the injury or damage. La. Civ.Code art. 3492; Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir.1988). [FN3]

> FN3. This same prescriptive period applies to plaintiff's proposed state-law conspiracy claim. La. Civ.Code art. 2324 (civil conspiracy is a delictual claim); La. Civ.Code art. 3492 (one-year prescriptive period for delictual actions); Housing Auth. v. Standard Paint & Varnish Co., 612 So.2d 916, 918 (La.App. 4th Cir.1993). According to plaintiff's memorandum in opposition to defendants' second motion for summary judgment, "I concluded [in January 1997] that theft by misappropriation was the only thing that made sense for why I was disqualified for financial aid," after learning of an alleged embezzlement from Delgado of more than $90,000 in 1994. Record Doc. No. 47, at ¶ 10. If this statement is true, plaintiff's conspiracy claim would also have prescribed one year after January 1997. However, plaintiff made no such statement in his Rule 7(a) Statement or any of his amended or proposed amended complaints, and his statement in his opposition memorandum is not evidence. Accordingly, the Court does not hold that Robinett's conspiracy claim has prescribed.

*5 Robinett's due process claims that arose more than one year before he filed this lawsuit, or before August 20, 1998, have clearly prescribed. He knew no later than his receipt of Dr. Ellis's letter dated June 7, 1995 that he had been declared ineligible for further financial aid and that his appeal procedures had been exhausted.

Robinett has asserted no impediment to bringing his due process claims within one year of the latest date

when he learned of them upon receiving Dr. Ellis's June 7, 1995 letter. Defendants are therefore entitled to summary judgment on any due process claims arising before August 20, 1998.

However, plaintiff reapplied for financial aid for the 1999-2000 school year and Delgado again refused to find him eligible for aid. His due process claim arising out of this refusal arose sometime in 1999, within the year before he filed suit, and therefore has not prescribed.

C. Qualified Immunity

Robinett asserts that he has a constitutional right to an education and to financial aid and that defendants' refusal to grant him those constitutional rights violated substantive and procedural due process. Defendants have asserted the defense of qualified immunity to plaintiff's due process claims.

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Colston v. Barnhart, 130 F.3d 96, 98 (5th Cir.1997); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532-33 (5th Cir.1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A qualified immunity defense is analyzed under a two-step process. Jacobs v. West Feliciana Sheriff's Dep't, No. 99-30185, 2000 WL 1289478, at *4 (5th Cir. Sept. 13, 2000); Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir.1998). The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right under currently applicable constitutional standards. Jacobs, 2000 WL 1289478, at *4; Coleman, 113 F.3d at 533 . If plaintiff has done so, the Court considers whether defendants' conduct was nevertheless "objectively reasonable." Id.

[T]he threshold inquiry in a qualified immunity case is whether the plaintiff has sufficiently alleged the violation of a clearly established constitutional right. If not .... the case should be dismissed. Furthermore, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a

constitutional right at all."
Id. (quoting Siegert v. Gilley, 500 U.S. 226, 232-33 (1991)) (emphasis added).

"A right is 'clearly established' only when its contours are sufficiently clear that a reasonable official would have realized that his conduct violated that right, not simply that the conduct was otherwise improper." Foster v. City of Lake Jackson, 28 F.3d 425, 429 (5th Cir.1994) (citations omitted). If the unlawfulness is apparent from pre-existing law, the Court could conclude that the constitutional right is clearly established. Id.

*6 If plaintiff has sufficiently alleged the violation of a clearly established constitutional right, the second step requires the Court to determine whether defendants' conduct was objectively reasonable under existing clearly established law. Jacobs, 2000 WL 1289478, at *5; Foster, 28 F.3d at 429. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir.2000) (citation omitted).

The Court can determine as a matter of law whether defendants are entitled to qualified immunity and, specifically, whether their conduct was objectively reasonable. Id.; Kipps v. Cailler, 197 F.3d 765, 769 (5th Cir.1999). "Even if defendants violated [plaintiff's] clearly established constitutional right, they are still entitled to qualified immunity if their actions were objectively reasonable." Id. Moreover, "even an officer who subjectively intends to act unreasonably is entitled to immunity if his actions are objectively reasonable." Id. (quotation omitted).

D. Plaintiff Has Not Identified Any Protected Property Right

Because Robinett has failed to identify any property right that would entitle him to due process for its deprivation, his due process claims must be dismissed. In the absence of an established constitutional right to due process, any individual defendants whom plaintiff might name would be entitled to qualified immunity under the first step of the qualified immunity analysis.

To trigger a guarantee of due process, Robinett must show that (1) a state actor (2) deprived (3) him [a person] (4) of a protected interest. Texas Faculty Ass'n v. University of Tex., 946 F.2d 379, 383 (5th Cir.1991). The first three factors are undisputedly in plaintiff's favor in this case. His case fails, however, on the fourth factor.

Property rights are undoubtedly protected by the Fourteenth Amendment. Copsey v. Swearingen, 36 F.3d 1336, 1341 (5th Cir.1994). However, "[t]o have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972); accord Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir.1995). Thus, Robinett must establish that he had a protected property interest in receiving financial assistance to pursue a second associate's degree. If he had such an interest, defendants could not deprive him of it without due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)).

Robinett identifies the federal Higher Education Act and its implementing regulations as the source of his property right. However, "property interests are creatures of state law," Board of Curators v. Horowitz, 435 U.S. 78, 82 (1978) (citation omitted), not federal law.
*7 [T]o establish either a substantive or a procedural due process violation by claiming denial of a property right, [plaintiff] must first establish a denial of a constitutionally protected property right.... Such a showing ... must be made by reference to state law. "The Constitution does not create property interests: 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." '
Bryan v. City of Madison, 213 F.3d 267, 274-75 (5th Cir.2000) (quoting Schaper v. City of Huntsville, 813 F.2d 709, 713 (5th Cir.1987) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)) (other citations omitted) (emphasis added). Accordingly, the Higher Education Act does not create a property right entitled to due process protection in students like Robinett who seek federal financial aid to attend a community college.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

2000 WL 1720553
(Cite as: 2000 WL 1720553, *7 (E.D.La.))

Furthermore, Robinett has identified no state law or other source [FN4] that creates such a property right. "Thus, it is apparent that [plaintiff] never had the right that he claims the defendants denied him.... Because [plaintiff] has failed to establish the denial of a property right, his due process claims fail." Bryan, 213 F.3d at 275; see also Spuler v. Pickar, 958 F.2d 103, 107 (5th Cir.1992) (plaintiff "enjoyed no property interest the deprivation of which merited procedural or substantive due process protection").

> FN4. Property rights may be created by "mutually explicit understandings," such as contracts, that "support a legitimate claim of entitlement under an independent source such as state law." Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 223 n. 9 (1985) (quotations omitted). None of the parties have suggested the existence of any property right arising from such an understanding in the instant case.

Robinett has no property right entitlement to federal financial assistance for students. Without any property right, Robinett has not alleged a violation of a clearly established constitutional right. Defendants are therefore entitled to qualified immunity on plaintiff's substantive and procedural due process claims. Id. at 108.

E. Plaintiff Received Adequate Process

The basis of a procedural due process claim is that the State, before depriving plaintiff of a recognized property or liberty interest, failed to afford him required procedures for challenging the State's action. Wheeler v. Miller, 168 F.3d 241, 248 (5th Cir.1999). A claim that Delgado failed to hold a hearing on Robinett's financial aid disqualification, therefore, can only amount to an actionable procedural due process claim if Delgado, after the time that a hearing would have been appropriate, proceeded to deprive him of a property interest. Id. The record does not support such a claim, as explained above, because Robinett fails to establish that he had a property interest.

However, even if plaintiff had a property right and even if some of his due process claims had not prescribed, the undisputed facts establish that he received adequate process. After he was notified of his disqualification in 1995, Robinett filed a written appeal with Delgado's Financial Aid Office. He had the opportunity to explain why Delgado should make

an exception in his case to its policy that students who exceeded 95 hours (or, under the current policy, 99 hours) are disqualified from financial aid.

*8 Delgado's policy permits long-term students, like Robinett, who have already received a two-year degree and who have been disqualified from financial aid for further degree programs because of their total number of hours attempted, to appeal their disqualification. Defendants' Exh. II, Spraglin affidavit, ¶ 6. Those appeals are reviewed on a case-by-case basis for any extenuating circumstances; i.e., the student must document his reason for seeking a second degree. Id. The appeals committee makes its decision based on the documentation of extenuating circumstances submitted. Id.; Defendants' Exh. III, Edwards affidavit; Plaintiff's Exh. P, Spraglin deposition at 98.

A three- to five-person committee reviewed plaintiff's appeal pursuant to Delgado's procedures [FN5] and found that he had been correctly disqualified. His appeal was subsequently reviewed twice again, and each time the disqualification was affirmed. Dr. Ellis investigated at plaintiff's request after his appeal had been denied, and she too found that the disqualification was correct based on the college's policies. Dr. Kennedy reviewed plaintiff's case again in 1999 and concluded that appropriate procedures had been followed and the initial decision was correct.

> FN5. In her affidavit, Edwards describes an appeals committee's general procedures. Three to five members are assigned to the committee. The committee reviews 25-30 student appeals at a meeting. Its review includes the college's computer file on the appealing student and the materials submitted by the student. The committee decides if any extenuating circumstances exist, such as extended illness or disability; surgery and/or hospitalization; loss of job/income; death or serious illness of immediate family member; and other cases recommended by a faculty advisor. Defendants' Exh. III, Edwards affidavit, ¶ 1; Defendants' Exh. II, Spraglin affidavit and attached Exh. B at p. 14, ¶ 2.

Robinett's claim amounts to a disagreement with Delgado's interpretation of the maximum credit hour limitation for financial aid eligibility. [FN6] He believes that the limitation should apply separately to each two-year degree sought and that it should have

recommenced at zero when he began his second degree program. Under his interpretation, having completed only 12 hours on his second degree as of January 1995, he believes that he is still eligible for financial aid for another 83 hours.

> FN6. This limit was 95 hours in 1994-1995, but was raised to 99 hours in 1999. From 1994 to the present, Delgado required an eligible student to maintain both a satisfactory grade point average and a maximum limit on hours attempted. In 1999, Delgado added a third requirement of a maximum time frame. This standard requires the student to achieve his or her chosen academic goal by the time the student has attempted 150% of the number of semester hours required for a degree or certificate. A student must now meet all three requirements to be eligible for financial aid. Defendants' Exh. II, Spraglin affidavit and attached Exh. A; Defendants' Exh. IX, letter dated October 1, 1999 from Kimberley Thompson, United States Department of Education, to Dr. Katherine H. Sippola, Delgado's Vice Chancellor for Student Affairs.

Delgado does not interpret its policy this way, and nothing in any of the written or testimonial evidence submitted by Robinett supports his interpretation. Delgado's Satisfactory Academic Progress Policy, which "has basically remained the same for the years in question except for a few minor changes for clarification," Defendants' Exh. II, Spraglin affidavit, at ¶ 7, states that, to be eligible for federal financial aid, "a degree-seeking student will be limited to ninety-five (95) semester hours attempted." Id., attached Exh. A at p. 12 (1995-1996 policy); see also id. at page entitled "The Application Process" (1998-1999 policy) (95 hours are the cumulative maximum that can be attempted); id. at page entitled "Staying Eligible for Student Financial Assistance" (1999-2000 policy) (cumulative maximum hours that can be attempted are 99); id. at page entitled "Staying Eligible for Student Financial Assistance" (2000-2001 policy) (same); Plaintiff's Exh. P, Spraglin deposition at 85-86, 88-89 (policy in effect in 1994-1995 was 95 hours). Robinett's "unilateral expectation" that he could continue to receive financial aid after exceeding 95 hours is not justifiable and does not create a protected property interest. Roth, 408 U.S. at 577; Bulger, 65 F.3d at 50; Schmidt v. Parish of Jefferson, 1999 WL 550207, at *6 (E.D.La. July 27, 1999); Waugh v. Connecticut Student Loan Fd.,

966 F.Supp. 141, 144 (D.Conn.1997).

*9 Even if one assumes arguendo that Robinett has a state-created property right, he has not shown that he has been deprived of it without due process. "When a plaintiff alleges that he has been deprived of property because of the random and unauthorized acts of government officials and seeks a post-deprivation remedy, there is no denial of due process if the state provides adequate post-deprivation remedies." Copsey, 36 F.3d at 1342 (citing Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984); Caine v. Hardy, 943 F.2d 1406 (5th Cir.1991) (en banc)). Robinett's claim falls squarely within this rule.

> First, the deprivation of which [plaintiff] complains was a random and unauthorized act ... in violation of state law. Second, it is clear that what [he] seeks is a post-deprivation remedy.... Therefore, there is no way that [Robinett] could have been granted a predeprivation remedy in this instance. Third, [plaintiff] has not demonstrated that Louisiana state law affords an inadequate remedy.... In essence, [plaintiff] complains that some of the defendants have violated state law [by depriving him of property and conspiring to steal his financial aid checks]. In the absence of evidence to the contrary, we must presume that Louisiana's court system is capable of redressing violations of state law. Cf. Marshall v. Norwood, 741 F.2d 761, 763 (5th Cir.1984) ("This Court has found that Louisiana law provides an adequate remedy for negligent action.").

Id. at 1343. Regardless whether defendants' actions in depriving or conspiring to deprive plaintiff of property were negligent or intentional, state tort law provides an adequate post-deprivation remedy.

Moreover, contrary to Robinett's argument, procedural due process in cases like this does not require a live, in-person hearing. At most, all that is required is "an informal give-and-take between the student and the administrative body ... that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the proper context." Horowitz, 435 U.S. at 86 (quotations omitted); accord Wheeler, 168 F.3d at 248. Delgado informed Robinett of its policy and its reasons for disqualifying him and permitted him to appeal and to submit written documentation of any

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

2000 WL 1720553
(Cite as: 2000 WL 1720553, *9 (E.D.La.))

Page 8

extenuating circumstances, which a multi-member committee then considered. Defendants permitted plaintiff to appeal twice again, and they considered his arguments and submissions in relation to Delgado's policy each time. These procedures satisfied procedural due process.

Therefore, assuming arguendo that Robinett had a clearly established constitutional right to receive continued financial aid, Delgado officials clearly acted in an objectively reasonable way on the undisputed facts in this record. Texas Faculty Ass'n, 946 F.2d at 390. This meets the second prong of the qualified immunity test. Defendants are therefore entitled to qualified immunity on plaintiff's procedural due process claim.

F. Defendants' Decision Was Not Arbitrary or Capricious

*10 Plaintiff raises a substantive due process claim when he argues that Delgado's application of its policy to him was arbitrary or capricious. For this claim, "[t]he judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of [appropriate] factors.... The only substantive process due [plaintiff], assuming he had a property interest, was the exercise of professional judgment, in a non-arbitrary and non-capricious fashion." Spuler, 958 F.2d at 107 (quotation omitted); accord State of Tex. ex rel. Bd. of Regents v. Walker, 142 F.3d 813, 819 (5th Cir.1998) (citing Ewing, 474 U.S. at 223-26).

Plaintiff has produced no evidence that the printed policies in effect at Delgado were not appropriately or professionally applied. The evidence in the record establishes that Delgado had an appeal procedure, which it followed, and that Delgado reviewed, but rejected, plaintiff's appeal three times. His complaint was later informally reviewed by Drs. Ellis and Kelly, with the same results. Robinett has produced no evidence of extenuating circumstances to justify a departure from Delgado's clearly stated policy of limiting financial aid eligibility to students who have attempted less than 95 to 99 hours.

Accordingly, defendants are entitled to summary judgment on plaintiff's substantive due process claim.

G. Plaintiff Fails to Establish a Conspiracy

Robinett alleges that a Delgado accounting department employee stole Pell and other grant checks from Delgado over a two-year period beginning in January 1995, around the same time that plaintiff's financial aid was denied. He alleges that persons in Delgado's accounting department, financial aid office and administration conspired to defraud students of federal grant money, which he believes was Delgado's true reason for disqualifying him for financial aid.

Plaintiff has produced no evidence to substantiate his mere subjective belief that a conspiracy existed.
    Needless to say, unsubstantiated assertions are not competent summary judgment evidence.... Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden. .... Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. In response to motions for summary judgment, it is therefore incumbent upon the non-moving party to present evidence--not just conjecture and speculation--[to support the essential elements of his claim].
    Grimes v. Texas Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 139-40 (5th Cir.1996) (citations and quotations omitted).

The undisputed evidence in this case negates the existence of a conspiracy under either Section 1983 or state law. "Although Section 1983 plaintiffs may assert conspiracy claims, a conspiracy by itself is not actionable under section 1983." Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir.1990), abrogated on other grounds by Martin v. Thomas, 973 F.2d 449 (5th Cir.1992)). "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir.1999) (citing Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir.1994)). Mere conclusory allegations of conspiracy, absent reference to material facts, cannot constitute grounds for Section 1983 relief. Rodriguez v. Neeley, 169 F.3d 220, 222 (5th Cir.1999); Dayse v. Schuldt,

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

894 F.2d 170, 173 (5th Cir.1990). If there has been no underlying violation of Section 1983, there can be no actionable conspiracy claim. Kerr, 171 F.3d at 341-42; Hale v. Townley, 43 F.3d 914, 920 (5th Cir.1995).

*11 Only if the state action is determined to be objectively unreasonable should the Court look to whether the officer's actions were taken pursuant to a conspiracy. Rodriguez, 169 F.3d at 222 (citing Pfannstiel, 918 F.2d at 1187. Thus, if defendants are entitled to qualified immunity for the alleged underlying violation, the Court need not even examine the conspiracy claim because it is not actionable. Hale, 43 F.3d at 920.

State law is similar. Plaintiff's claim for civil conspiracy arises under Louisiana Civil Code article 2324, which provides: "He who conspires with another person to commit an intentional or willful act is answerable, in solido with that person for the damage caused by such act." However,
    Civil Code article 2324 does not by itself impose liability for a civil conspiracy. The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part. In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury.
Butz v. Lynch, 710 So.2d 1171, 1174 (La.App. 1st Cir.1998); accord Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir.1995); Silver v. Nelson, 610 F.Supp. 505, 516 (E.D.La.1985).

"In this case, the unlawful act is conversion. Conversion is defined as an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently, or for an indefinite time." Chrysler Credit Corp., 51 F.3d at 557.

Robinett has failed to submit any evidence of any unlawful act of conversion or conspiracy to commit such an act, as he is required to do in response to a motion for summary judgment. The evidence establishes that neither Delgado nor the federal government disbursed any money to Robinett in the

spring of 1995 because he had been disqualified from federal aid for that semester and thereafter. Therefore, no checks were produced for him and no checks were stolen in 1995 to 1997 that should have been paid to him. Defendants' Exh. III, Edwards affidavit and attached Exh. D (showing Delgado's receipt of only $288 in Pell Grant money for plaintiff in 1995); Defendants' Exh. IV, affidavit of Steve H. Cazaubon, Director of Finance and Budget for the Delgado System (Delgado draws funds from the federal government at the end of each semester after Delgado has issued financial aid checks to the student for that semester); Defendants' Exh. VI, Azuoru affidavit and attachments (showing award of $288 Pell Grant for the fall 1994 semester and of $287 for the spring 1995 semester, but disbursement of only the $288 Pell Grant to plaintiff); Plaintiff's Exh. P, Spraglin deposition at 23-24, 28-29, 34-35.

Finally, as discussed above, defendants' actions in denying Robinett financial aid were objectively reasonable, thus negating any possibility of an actionable conspiracy claim under Section 1983. Rodriguez, 169 F.3d at 222; Hale, 43 F.3d at 920. Further, he has produced no evidence from which a reasonable factfinder could infer a conspiracy to deny him financial aid. See Plaintiff's Exh. P, Spraglin deposition at 26-28, 31 (checks were stolen from accounting department, which is completely separate from financial aid office; financial aid office makes awards but accounting office handles disbursements; checks were not cut for students who had been disqualified for financial aid).

*12 Accordingly, no material facts are in dispute and defendants are entitled to summary judgment on plaintiff's proposed conspiracy claim.

H. Robinett's Proposed Amended Complaint Is Dilatory and Futile

In an attempt to cure the defects raised by defendants, Robinett has filed a motion for leave to "supplement" his complaint. Record Doc. No. 36. My review of the proposed complaint reveals that it will not save his case from summary judgment.

Robinett wishes to amend his complaint to add as defendants "other State employees unknown." Leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), but "is by no means automatic." Wimm v. Jack Eckerd Corp., 3 F.3d

137, 139 (5th Cir.1993) (quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." Id.

Robinett's proposed amendment is dilatory. In the nine months that this case had been pending when he requested leave to amend, he had already amended his complaint twice without curing the deficiency of failing to name a proper party defendant. Now he seeks to amend to name "unknown State employees." In addition, he indicates that he intends to allege a conspiracy once he discovers the names of these unknown persons. [FN7] Permitting this third amendment now will obviously require a fourth amendment in the future.

> FN7. In his Rule 7(a) pleading, filed pursuant to court order approximately six weeks after his motion to amend was filed, Robinett names only Dr. Kelly, Delgado's current chancellor, and Germaine Edwards, the current Director of Finance at Delgado's City Park Campus, as potential defendants. Record Doc. No. 44, at § 17. He alleges no facts that implicate either of these individuals in any conspiracy.

The amendment is also largely futile. "When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation...." Jamieson ex rel. Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir.1985). If the amendment would offer plaintiff no avenue of redress, there is no reason to allow it. Davis v. United States, 961 F.2d 53, 57 (5th Cir.1991).

Thus, the Court must examine the sufficiency of the amended complaint to see whether it could survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Jamieson, 772 F.2d at 1209. Accepting plaintiff's allegations as true and viewing them in the light most favorable to him, it appears beyond doubt that he could prove no set of facts in support of his claims that would entitle him to relief. Id.

First, as the Court held in granting defendants' first motion for summary judgment, Robinett's claims against any defendant under the Higher Education Act are barred because that statute provides for no private right of action. Thus, allowing him to amend his complaint to name individual defendants on his claims of violations of the Higher Education Act would be futile.

Similarly, his claims under Section 1983 against any state official in his or her official capacity for damages or retroactive injunctive relief are barred by sovereign immunity and because such officials are not "persons" for purposes of Section 1983, and allowing him to name individual defendants on those claims is also futile.

*13 Furthermore, as discussed above, permitting Robinett to amend to name individual defendants in their official capacities to seek prospective injunctive relief would be futile. His due process claims arising before August 20, 1998 have prescribed. He has failed to identify any property right that would entitle him to due process. Even if he had such a property right, he received adequate process. Finally, his conspiracy claim would fail for the reasons stated above.

Accordingly, plaintiff's motion to amend his complaint for the third time and for sanctions is denied.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that defendants' motion for summary judgment is GRANTED and that plaintiff's motion to amend his complaint and for sanctions is DENIED. Judgment will be entered dismissing all claims against defendants, Delgado Community College, the Board of Supervisors of the Louisiana Community and Technical College System and the Board of Supervisors of the University of Louisiana System, with prejudice. All costs of this proceeding are assessed against Robinett.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Client Identifier: **RBE**
Date of Request: 02/12/01
The Current Database is DCT